IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

FOURTH JUDICIAL DISTRICT AT BETHEL

JACK CHARLES &
BERNADETTE CHARLES,

        Plaintiffs,

vs.

GEICO GENERAL INSURANCE
COMPANY,

        Defendant.

---

GEICO CASUALTY COMPANY,

        Third Party Plaintiff,

vs.

VALERIE JOE,

        Third Party Defendant.        Case No. 4BE-05-55 Civil

**CALL, HANSON & KELL, P.C.**
250 H. Street
Anchorage, Alaska 99501-2112
Phone (907) 258-8864 • Fax (907) 258-8865

## REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AS TO ALL CLAIMS OF BAD FAITH

### There are no genuine issues of material facts concerning bad faith claim

      This is a lawsuit for **bodily injury uninsured motorist** (UM) benefits.

The only relevant question is whether GEICO had a reasonable basis for

denying policy limits on the uninsured bodily injury claims. *Hillman v.*

Reply to Opposition to Motion for Summary Judgment
Charles v. GEICO, Case No. 4BE-05-55 CI
Page 1 of 19



CALL, HANSON & KELL, P.C.
250 H. Street
Anchorage, Alaska 99501-2112
Phone (907) 258-8864 • Fax (907) 258-8865

*Nationwide Mutual Fire Insurance Company,* 844 P.2d 1321 (Alaska 1993). Plaintiffs have not filed any affidavits or other statements of fact showing that their UM bodily injury claim is valued at or above policy limits. They offer only the fact that the insured paid $67.70 for UM coverage. (See Opposition, p. 2). The amount of the premium is not relevant to the value of these UM claims. The plaintiffs do not dispute that their medical expenses were primarily diagnostic. Treatment costs for Charles were $360.50 and $167.35 for Bernadette. All treatment and diagnosis expenses are covered under the Charles' $5,000 in medical payments coverage. The UM bodily injury coverage is excess to the medical payments coverage. The records show no severe injury, no continuing treatment or even any complaint of continuing systems. Plaintiffs offered no additional evidence of the extent of their injuries.

The claims were reviewed by Colrain Ingersoll, manager of the Alaska Claims Examiner Station in Alaska. (Exhibit E, p. 25). Colrain Ingersoll has substantial experience in Alaska Claims, having lived in Alaska for a number of years while working for GEICO. Ms. Ingersoll valued the claims at $5,000 for Bernadette Gregory and $4,000 for Jack Charles. (Exhibit E, p. 25). The evaluations were reviewed once again by Bernie Putnam. (Exhibit E, p. 25). Rebecca Caldwell conveyed offers of $5,500 for Jack Charles and $6,300 for Bernadette Gregory. There is absolutely no evidence that these are unreasonably low offers or offers below the range of human or

computerized judgments. This court cannot rule, as a matter of law, that plaintiffs' damages meet or exceed the $50,000 per person in UM bodily injury limits. An insurance company may still challenge claims which are fairly debatable. *Hillman* at 1324. GEICO is entitled to summary judgment on the bad faith and punitive damages claims.

## Reasonable inferences of material facts support summary judgment

The court draws only *reasonable* inferences based on material facts. See *Providence Washington Ins. Co., v. Fireman's Fund Ins. Co.,* 778 P.2d 200, 203 (Alaska 1989). Plaintiffs offer unreasonable inferences as set out below:

Plaintiffs want this court to infer from the facts that GEICO failed to contact them for more than three months after the accident. (Opp. P. 3). Based on a review of the adjuster log notes, the only reasonable inference is that the **insureds** intentionally evaded GEICO's repeated attempts to contact them. Valerie Joe's liability claim was originally assigned to adjuster Maggie Vincent, Exhibit E, p. 6 (Aff. L. Grothen). Ms. Vincent called Jack Charles on May 4, 2004, the day following the accident. Exhibit Exhibit E, p. 7. Mr. Charles advised her that he intended to get an attorney and Ms. Vincent asked him or his attorney to call her back. No one returned a call to Ms. Vincent.

When GEICO determined that Ms. Joe was not insured, the claim was assigned to the UM claims adjuster, Rebecca Caldwell. (Exhibit E, p. 9 and

CALL, HANSON & KELL, P.C.
250 H. Street
Anchorage, Alaska 99501-2112
Phone (907) 258-8864 • Fax (907) 258-8865

Affidavit of L. Grothen.)  On May 7, Ms. Caldwell called Charles at work and

at home. She left a voice message that she needed to investigate liability and

needed a recorded interview as soon as possible. She noted that an attorney

may have been retained and, if so, asked Charles to have his attorney call.

(Id.)

On May 14, Ms. Caldwell called Charles again and left messages for

Charles to return the call for a recorded interview and advised Charles to go

through med pay process for his medical expenses. (Ex. E, p. 10.) On May

14, she mailed med pay forms. (Ex. E., p. 10) She called Charles' work

number again on June 1, 2004 but was advised that Charles was in

Anchorage. (Ex. E., p. 11).  She also called Charles' home number again on

June 1 and left a message that she needed to speak with them both for facts

of accident and injuries. She requested a call back ASAP.  On June 2, 2004,

she wrote a letter to Jack Charles requesting a recorded statement. The

letter was correctly mailed to Charles post office box number. (Ex. G.)  On

June 29, she called Charles again at work and was transferred to the

medical records department. She spoke with an unknown male who

identified himself as "John" but whose voice sounded the same as the voice

at Jack Charles' residence number.  Again, she left a message to call back

"re: mva."  Believing that "John" was, in fact, Jack Charles, Ms. Caldwell

followed up with a certified letter to Jack Charles.  Unfortunately the

certified letter was mailed to an insufficient street number address provided

CALL, HANSON & KELL, P.C.
250 H. Street
Anchorage, Alaska 99501-2112
Phone (907) 258-8864 • Fax (907) 258-8865

by Jack Charles and was returned to GEICO. (Ex. E., p. 12) Consequently, Ms. Caldwell reviewed the file with her manager and it was decided on July 16, to send the letter to the post office box address. (Ex. E., p. 13). The letter was sent and apparently received. (Exhibit G.)

GEICO's adjuster made four telephone calls and wrote two letters attempting to get some cooperation from Mr. Charles. Finally, on July 27 GEICO received a letter from Valcarce notifying GEICO that Charles was making a UM claim; that he represented Charles; and, he instructed GEICO not to contact the insureds directly. (Exhibit H). Plaintiffs fail to explain why Valcarce did not return calls to Maggie Vincent or to Rebecca Caldwell or why he did not advise GEICO of his representation until July 27th.

If GEICO "failed to contact their insureds for more than three months" the fault lies with the insureds. If any unreasonable conduct or bad motives can be inferred from these facts, it is the insureds' conduct that was unreasonable and in breach of the insurance contract.

Plaintiffs want this court to infer, from the facts, that they were forced to obtain an attorney "months after GEICO failed to do anything." (Opp. p. 4). The facts are undisputed. Jack Charles obtained an attorney the day following the accident. On May 4, 2004 he advised GEICO as follows:

> He advised Bethel PD came out, but just gave accident report forms to fill out & mail in. Police talked to witness, but neither clmt or insd got wit. info. Insd's brother suggested he get an attny, Insd has appt w/ attny in half an hour. Advsd if he retains attny to give attny my info, if not pls call back for stmt.

CALL, HANSON & KELL, P.C.
250 H. Street
Anchorage, Alaska 99501-2112
Phone (907) 258-8864 • Fax (907) 258-8865

Ex. E, p. 7. Then, on May 6, 2004, Jim Valcarce ("Valcarce") wrote the Bethel Police Department advising that he represented Jack Charles and Bernadette Gregory with respect to the May 3 accident. (Exhibit F). Valcarce did not advise GEICO of his involvement until months after the accident. (Exhibit H).

Plaintiffs want this court to infer that they sent GEICO photos of damages, releases and other information on August 12, 2004. Despite when Valcarce dated his letter to GEICO, the undisputed facts show that GEICO did not receive documents until September 1, 2004. (Exhibit U and Z)

Plaintiffs want this court to infer that GEICO never used the medical releases to request documents; failed to speak to co-workers; and failed to mail employment releases." (Opposition p. 3-4 and p. 9). The employment authorizations offered to GEICO are totally worthless. (Exhibit U). Plaintiffs failed to date the authorizations, insert the name of their employers or any address for their employer. Jack Charles signature is illegible. (Ex. U). The medical releases originally omitted the names of the medical providers. Plaintiffs did not tell GEICO the identity of the medical providers until October 8, 2004. (Ex. E., p. 19).

Bernadette Gregory and Jack Charles executed medical releases in favor of Cooke, Roosa & Valcarce dated October 4, 2004. (Exhibit W). Once GEICO had the names of the providers, GEICO requested medical records

CALL, HANSON & KELL, P.C.
250 H. Street
Anchorage, Alaska 99501-2112
Phone (907) 258-8864 • Fax (907) 258-8865

CALL, HANSON & KELL, P.C.

250 H. Street

Anchorage, Alaska 99501-2112

Phone (907) 258-8864 • Fax (907) 258-8865

on October 15, 2004. (Exhibit V.)  Jack Charles worked in the medical records department of the very clinic where he was treated.  GEICO's request for documents was ignored by the medical records department. On November 5, 2005 Ms. Caldwell wrote Valcarce to advise him that the medical records had not been received from the providers. (Ex. M). Valcarce did not provide the medical records until January, 2005. (Ex. N.)

Reasonable inferences of the facts show that plaintiffs were intentionally trying to set GEICO up for an extortionate bad faith claim.

Plaintiffs erroneously argue that the "determinative question is the reasonableness of the insurer's actions in light of all the facts and circumstances of the case" citing *Industrial Indem. Co. of Northwest, Inc. v. Kallevig,* 792 P.2d 520 (Wash. 1990) and *Anderson v. State Farm Mut. Ins. Co.,* 2 P3d 1029 (Wash. App. 2000).  These Washington cases do not reflect Alaska's law on bad faith.[1]  The determinative question in Alaska is very narrow:  the plaintiffs must establish "the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim."  *Hillman v.*

---

[1] Plaintiff relies on only one Alaska case, *State Farm Mutual v. Weiford,* 831 P.2d 1264 (Alaska 1992). The *Weiford* case involved a first-party UM dispute where liability and the extent of injury was undisputed.  The appeal focused on the award of punitive damages, not damages for bad faith.  The Court did not address the elements of bad faith in a first party case until the *Hillman* decision. That decision was issued in the year following the *Weiford* decision.

CALL, HANSON & KELL, P.C.
250 H. Street
Anchorage, Alaska 99501-2112
Phone (907) 258-8864 • Fax (907) 258-8865

*Nationwide Mutual Fire Insurance Company,* 844 P.2d 1321 (Alaska 1993) (quoting *Anderson v. Continental Ins. Co.,* 271 N.W.2d 368, 376-77 (Wis. 1978). The Alaska Court rejected the idea that bad faith could be inferred from a totality of circumstances. In *Hillman,* the plaintiffs argued that Nationwide failed to make *any* investigation, denied a death claim without a significant investigation, violated its own guidelines and policies, failed to consult with higher echelons in the company before denying a death claim, ignored advice of counsel, failed to resolve all reasonable doubts about coverage in favor of the policy holder, failed to advise the policy holder of the legal opinion, lied to the policy holder about whether a legal opinion was available, and "stonewalled" the claim for four years. The Supreme Court found that *none of those facts* would suffice to raise a factual question as to whether Nationwide's denial of coverage lacked a reasonable basis. Therefore, even if all reasonable inferences suggest that GEICO could have completed an independent investigation of the facts without any cooperation from the insured; that GEICO could have resolved the property claim faster; and, that GEICO could have evaluated the bodily injury claim faster GEICO would still be entitled to summary judgment. The only relevant question is whether GEICO had a reasonable basis for rejecting the demand for policy limits. The answer is yes. Plaintiffs cannot establish that their bodily injury claims have a value equal to or greater than policy limits. If the court cannot find Valerie Joe 100% liable as a matter of law and also find that

plaintiffs claims meet or exceed policy limits, then the values of the claims are fairly debatable and GEICO is entitled to summary judgment on the claims of bad faith.

**Litigation conduct is not a valid basis for a claim of bad faith.**

Plaintiffs raise objections to GEICO's third-party complaint to collect its subrogation interest against Valerie Joe; the assertion of an affirmative defense of comparative negligence; and in settling both the subrogation claim and Joe's counterclaim against Mr. Charles. Plaintiffs imply without direct assertion, that GEICO's litigation conduct supports their claims for bad faith.

Although there is no Alaska case directly on point, a frequently cited Montana case sets out the reasons that litigation conduct should not be part of the evidence of a claim of bad faith:

> Public policy favors the exclusion of evidence of an insurer's post-filing litigation conduct in at least two respects. First, permitting such evidence is unnecessary because during the initial action, trial courts can assure that defendants do not act improperly. Next, and more importantly, the introduction of such evidence hinders the right to defend and impairs access to the courts.
>
> The Rules of Civil Procedure control the litigation process and, in most instances, provide adequate remedies for improper conduct during the litigation process. Once the parties have assumed adversarial roles, it is generally for the judge in the underlying case and not a jury to determine whether a party should be penalized for bad faith tactics. (cites omitted.)
>
> An attorney in litigation is ethically bound to represent the client zealously within the framework provided by statutes and the Rules of Civil Procedure. These procedural rules define clear boundaries of

CALL, HANSON & KELL, P.C.
250 H. Street
Anchorage, Alaska 99501-2112
Phone (907) 258-8864 • Fax (907) 258-8865

litigation conduct. If a defense attorney exceeds the boundaries, the judge can strike the answer and enter judgment for the plaintiff, enter summary judgment for the plaintiff, or impose sanctions on the attorney. (cite omitted.) There is no need to penalize insurers when their attorneys represent them zealously within the bounds of litigation conduct. To allow a jury to find that an insurer acted in bad faith by defending itself is to impose such a penalty.

The most serious policy consideration in allowing evidence of the insurer's post-filing conduct is that it punishes insurers for pursuing legitimate lines of defense and obstructs their right to contest coverage of dubious claims. As discussed below, if defending a questionable claim were actionable as bad faith, it would impair the insurer's right to a zealous defense and even its right of access to the courts.

*Palmer v. Farmers Ins. Exchange,* 861 P.2d 895, 914 (Mont. 1993). In the *Palmer* litigation the appellate court concluded that an insurer steps into the shoes of the uninsured driver and therefore should be treated as a third party rather than a representative of the insured.

Alaska has the same standard as Montana for judging an insurer's alleged bad faith in first-party insurance cases: "it necessarily requires that the insurance company's refusal to honor a claim be made without a reasonable basis." *Hillman* at 1324 and *Palmer* at 904. Post-filing litigation conduct has no bearing on the reasonableness of the pretrial basis for denial of a claim.

The Tenth Circuit Court of Appeals analyzed the danger of allowing an insured to claim litigation conduct as evidence of bad faith and found it would have a chilling effect on the right of insurers to defend themselves:

CALL, HANSON & KELL, P.C.
250 H. Street
Anchorage, Alaska 99501-2112
Phone (907) 258-8864 • Fax (907) 258-8865

> Allowing litigation conduct to serve as evidence of bad faith would undermine an insurer's right to contest questionable claims and to defend itself against such claims. . . . permitting allegations of litigation misconduct would have a "chilling effect on insurers, which could unfairly penalize them by inhibiting their attorneys from zealously and effectively representing their clients within the bounds permitted by Law." (cite omitted.)

*Timberlake Construction Co. v. U.S. Fidelity and Guaranty Co.,* 71 F.3d 335, 341 (10th Cir. 1995).

Under the civil rules, GEICO is entitled to present a full and vigorous defense to the claims against it and to pursue non-frivolous claims of its own. GEICO filed a legitimate, non-frivolous third-party complaint against Valerie Joe. The subrogation claim belonged to GEICO and GEICO was entitled to settle, waive or compromise its subrogation claim as it saw fit. Exhibit S, p. 9 and *Ruggles ex rel Estate of Mayer v. Grow,* 984 P.2d 509 (Ak 1999). GEICO also had the authority and duty to accept reasonable settlement offers. GEICO had a reasonable basis for settling the claims against and by Valerie Joe. Settlement avoids Charles exposure to any excess judgment and attorney fees that might be awarded to Valerie Joe and it reduces the costs of the litigation to GEICO.

This Court has full authority to control the conduct of attorneys appearing before it, as well as authority over the issues and evidence to be considered at trial. The Court should not allow arguments about the

CALL, HANSON & KELL, P.C.
250 H. Street
Anchorage, Alaska 99501-2112
Phone (907) 258-8864 • Fax (907) 258-8865

conduct of the litigation itself to become part of the issues tried or the basis for tort damages.

**No response to the negligent failure to offer higher limits**

Plaintiffs have offered no opposition to GEICO's motion for summary judgment on the "failure to offer" higher UM policy limits. This issue was conclusively decided in *Graham-Gonzalez v. Government Employees Insurance Company,* 107 P.3d 279 (Alaska 2005). Consequently, GEICO is entitled to summary judgment on this issue.

**GEICO is entitled to summary judgment on the breach of contract claims**

**a.    Liability claim**

This accident triggered three separate sections of the Charles' insurance policy: liability, medical coverage and uninsured motorist coverage. The first coverage triggered was the liability coverage. Valerie Joe filed a liability claim against Jack Charles. This claim triggered Charles' obligation to notify GEICO about the facts of the accident, any injures and any property damage. Under Section I, Liability Coverages, the policy requires the insureds' cooperation as follows:

**CONDITIONS**

1.    NOTICE

As soon as possible after an occurrence, written notice must be given us or our authorized agent stating:
(a)    the identity of the insured;

CALL, HANSON & KELL, P.C.
250 H. Street
Anchorage, Alaska 99501-2112
Phone (907) 258-8864 • Fax (907) 258-8865

> (b)    the time, place and details of the occurrence;
> (c)    the names and addresses of the injured, and of any witnesses; and;
> (d)    the names of the owners and the description and location of any damaged property.
>
>       *     *     *
>
> 3.    ASSISTANCE AND COOPERATION OF THE **INSURED**
>
> The ***insured*** will cooperate and assist us, if requested:
> (a) in the investigation of the occurrence;
> (b) in making settlements;

Exhibit S, p. 5.

Plaintiffs do not dispute that they had a duty to cooperate with GEICO in resolving liability. Yet, plaintiffs offer no excuse for their own delay in giving a recorded statement.

**b.    Med pay claim**

Section II of the automobile insurance policy imposes similar obligations on the insured:

> The following conditions apply to this Coverage:

1.    NOTICE

> As soon as possible after an accident, written notice must be given us or our authorized agent stating:
>
> (a) the identity of the ***insured;***
> (b) the time, place and details of the accident; and
> (c) the names and addresses of the injured, and of any witnesses.

4.    MEDICAL REPORTS – PROOF AND PAYMENT OF CLAIMS

**CALL, HANSON & KELL, P.C.**
250 H. Street
Anchorage, Alaska 99501-2112
Phone (907) 258-8864 • Fax (907) 258-8865

As soon as possible, the injured person or his representative will furnish us with written proof of claim, under oath if required. After each request from us, he will give us written authority to obtain medical reports and copies of records.

\* \* \*

We may pay either the injured person, the doctor or other persons or organizations rendering medical services. These payments are made without regard to fault or legal liability of the ***insured.***

Exhibit S, p. 6-7. In this case, GEICO representative Mark Hill advised Jack Charles that the policy included med pay coverage. On May 14, Rebecca Caldwell mailed med pay forms to the insured. (Ex. E., p. 10). Plaintiffs never filed a medical payments claim. (Affidavit of Lon Grothen). Valcarce told Lon Grothen that plaintiffs did not incur any out-of-pocket medical expenses.

## Insured bodily injury and property damage

Section IV of the insurance contract also imposes a duty on the insured to provide GEICO with proof of loss:

**CONDITIONS**

2.    PROOF OF CLAIM – MEDICAL REPORTS – PROOF OF LOSS

As soon as possible, the ***insured*** or other person making claim must give us written proof of claim, under oath if required. This will include details of the nature and extent of injuries, treatment and other facts which may affect the amount payable.

The ***insured*** or other person making a property damage claim shall file a proof of loss with us as soon as practicable. The proof of loss shall be a sworn statement as to the interest of the ***insured*** and anyone else in the property, any encumbrances upon the property, actual cash value at the time of loss, amount, place, cause and time

CALL, HANSON & KELL, P.C.
250 H. Street
Anchorage, Alaska 99501-2112
Phone (907) 258-8864 • Fax (907) 258-8865

of loss, and description and amounts of all other insurance covering this property. Upon our request, the **_insured_** will show us the damaged property.

Exhibit S, p. 12 and 13.

Alaska statutes also put the burden of proof on the insured. AS 21.42.300 provides as follows:

An insurer shall furnish, upon written request of the person claiming to have a loss under an insurance contract issued by the insurer, forms of proof of loss for completion by the person, **but the insurer is not, by reason of the requirement to furnish forms, responsible for or with reference to the completion of the proof or the manner of the completion or attempted completion.**

AS 21.42.300 (emphasis added).

Alaska's administrative regulations also recognize the insured's duty to provide proof of loss. 3 AAC 27.070 requires the insurer "to make a reasonable investigation of all of available information and accept or deny the claim within fifteen days **_after receipt of a properly executed statement of claim, proof of loss, or other acceptable evidence of loss._**" (emphasis added.)

Plaintiffs did not send GEICO a property damage estimate until August 2004. The estimate was received September 1st. (Exhibit Y) Plaintiff Jack Charles claimed $6,982.20 in property damages as a result of the May 3 accident. GEICO investigated the extent of reported loss and on November 9, discovered that the vehicle was reported as a prior total loss. (Exhibit X).

CALL, HANSON & KELL, P.C.
250 H. Street
Anchorage, Alaska 99501-2112
Phone (907) 258-8864 • Fax (907) 258-8865

If there was any delay in concluding the UM property damage, the delay was caused by the late and fraudulent submission of the property damage claim.

GEICO received "acceptable evidence of loss" for the bodily injury claim on January 7, 2005. GEICO's obligation to investigate the UM claims was only triggered after GEICO received a satisfactory proof of loss. GEICO concluded its investigation and made an offer of settlement on January 26.

GEICO met its obligations under the contract and is entitled to summary judgment on plaintiffs' claims of breach of contract.

## Statutory claims

Despite their complaints of delay and insufficient investigation Plaintiffs cannot establish one violation of Alaska's Unfair Claims Practices Act. Attached as Exhibit T is a copy of GEICO's insurance expert report from John L. George. Mr. George is the former Director of Alaska Division of Insurance, responsible for regulating insurance companies and insurance producers in the State of Alaska. After reviewing the claims file, Mr. George concludes that GEICO did not violate AS 21.36.125. GEICO is entitled to summary judgment on this issue.

## Punitive Damages

The conduct required to support a claim for punitive damages must be more egregious than the intentionally unreasonable conduct required for a finding of bad faith. *State Farm Mutual v. Weiford*, 831 P.2d 1264, 1266

CALL, HANSON & KELL, P.C.
250 H. Street
Anchorage, Alaska 99501-2112
Phone (907) 258-8864 • Fax (907) 258-8865

(Alaska 1992). Punitive damages are limited to conduct that can fairly be categorized as "outrageous, such as acts done with malice or bad motives or reckless indifference to the interests of another." *Id. (cites omitted).* To support punitive damages a plaintiff must offer clear and convincing evidence. *State Farm Fire & Cas. Co. v. Nicholson,* 777 P.2d 1152, 1158 (Alaska 1989). In this case, plaintiffs merely characterize GEICO's conduct as "outrageous" without specific allegations of fact.

Plaintiffs' conduct evidences bad motives. The plaintiff's and their counsel refused to return calls for three months. The plaintiffs sent back incomplete medical and employment authorizations. Jack Charles worked in the medical records department but didn't respond to GEICO's written requests for records. It was plaintiff's counsel who hung up the telephone when GEICO's adjuster requested a recorded statement. Plaintiffs filed a claim for property damages that were caused, in part, by an earlier accident. Plaintiffs demand policy limits without offering any evidence that their claims exceed the offers made by GEICO.

No reasonable jury could find by clear and convincing evidence that GEICO acted with malice, bad motives or reckless indifference. GEICO is entitled to summary judgment on punitive damages.

## Conclusion

Plaintiffs' allegations of bad faith, breach of contract, statutory violations, conspiracy and extreme and outrageous conduct are unfounded.

CALL, HANSON & KELL, P.C.
250 H. Street
Anchorage, Alaska 99501-2112
Phone (907) 258-8864 • Fax (907) 258-8865

They attempt to extort policy limits with the threat of bad faith and burdensome and expensive discovery if GEICO does not yield to their demands. Plaintiffs conduct illustrates the extortionate behavior that concerned the court in *Hillman*. Their claims are not supported by the facts or the law.  This is a simple case of liability and bodily injury damages. This court has an obligation to intervene and deter these frivolous claims. GEICO is entitled to summary judgment on all contract and tort claims brought directly against GEICO.

DATED at Anchorage, Alaska, this 8th day of November, 2005.

CALL, HANSON & KELL, P.C.
Attorneys for Defendant

By: _____
Blake H. Call
ABA No. 8911051

CALL, HANSON & KELL, P.C.
250 H. Street
Anchorage, Alaska 99501-2112
Phone (907) 258-8864 • Fax (907) 258-8865

I hereby certify that a true and correct
copy of the foregoing was ☐ faxed ☐
hand delivered and/or ☒ mailed this
___ day of November 2005 to:

Jim J. Valcarce
Cooke, Roosa & Valcarce, LLC
P.O. Box 409
Bethel, AK 99559-0409

Michele L. Power, Esq
Angstman Law Office
P.O. Box 585
Bethel, AK 99559

_____
Mona Schultz

G:\00 CHK Law\GEICcuO\1101 - GEICO\027 - Charles & Gregory UM\Pleadings\Reply Opp Sum Jdmt Charles.doc

**CALL, HANSON & KELL, P.C.**
250 H. Street
Anchorage, Alaska 99501-2112
Phone (907) 258-8864 • Fax (907) 258-8865

Reply to Opposition to Motion for Summary Judgment
Charles v. GEICO, Case No. 4BE-05-55 CI
Page 19 of 19

## A F F I D A V I T

I, Mary Arevalo, Claims Coverage Underwriter of GEICO Casualty Company, a

corporation organized and existing under the laws of the state of Maryland, do hereby

certify that the attached Policy Declaration sheet, amendments, endorsements, and policy

contract was recreated based on records retained in our computer data files and are

particular to this policy:  4006-81-40-67 issued to Jack Charles for Renewal effective

04/08/04, processed on 02/21/04 and in effect on 05/03/04.


Mary Arevalo
Claims Coverage Underwriter


Exhibit ___5___
Page___1___of_21_Pages

# GEICO

| FAMILY AUTOMOBILE RENEWAL POLICY DECLARATIONS |

GEICO CASUALTY COMPANY                    **THIS IS A RECREATED DOCUMENT**
ONE GEICO PLAZA, WASHINGTON, D.C.  20047-0001                    Please keep for your records
                                                                                    Page 1
Telephone: 1-800-841-3000    Fax: 1-800-437-8837

POLICY PERIOD FROM 04-08-04 TO: 10-08-04 12:01AM LOCAL TIME AT THE ADDRESS OF THE NAMED
INSURED.

| POLICY NUMBER: 4006-81-40-67 |

                        DATE PROCESSED: 02-21-04        CONTRACT TYPE: A30AK

Named Insured and Address

   JACK CHARLES
   PO BOX 722
   BETHEL AK 99559-0722

CONTRACT AMENDMENTS:     ALL VEHICLES - A30AK, CC1148, CC200
UNIT ENDORSEMENTS:

RECREATED DOCUMENT
U-31-DP

                                                                                    (1)

Exhibit___5___
Page_2_of_21_Pages

GEICO CASUALTY COMPANY

OLICY NUMBER: 4006-81-40-67          DATE PROCESSED: 02-21-04

                                                                    PAGE 2
          VEHICLE                          RATED LOCATION

  92 CHEV  1G1JC5444N7140050              BETHEL AK 99559

| COVERAGES Coverage applies where premium or 0.00 is shown for vehicle | LIMITS OR DEDUCTIBLES | PREMIUMS | | |
|---|---|---|---|---|
| | | VEH 1 | VEH 2 | VEH 3 |
| BODILY INJURY LIABILITY EACH PERSON/EACH OCCURENCE | $50,000 / 100,000 | 253.70 | | |
| PROPERTY DAMAGE LIABILITY | $25,000 | 243.40 | | |
| MEDICAL PAYMENTS | $5,000 | 47.70 | | |
| UNINSURED & UNDERINSURED MOTORIST EACH PERSON/EACH OCCURRENCE | $50,000 / 100,000 | 67.70 | | |
| UNINSURED MOTORIST PROPERTY DAMAGE | $25,000 | 29.50 | | |

| SIX MONTH PREMIUM PER VEHICLE | $642.00 |
|---|---|

LIENHOLDER VEHICLE 1          LIENHOLDER VEHICLE 2          LIENHOLDER VEHICLE 3

RECREATED DOCUMENT
U-31-DP

Exhibit 5
Page 3 of 21 Pages



# GEICO

ONE GEICO PLAZA
Washington, D. C. 20076-0001
Telephone: 1-800-841-3000

---

# Alaska
# Family
# Automobile
# Insurance
# Policy

---

- Government Employees Insurance Company
- GEICO Casualty Company
- GEICO General Insurance Company
- GEICO Indemnity Company

POLICY INDEX

Page

**SECTION I**

Liability Coverages
Your Protection Against Claims From Others

Definitions.........................................................3
Losses We Will Pay For You..............................3
Additional Payments We Will Make Under The
    Liability Coverages..................................3
    Legal Expenses And Court Costs
    Bail And Appeal Bonds
    First Aid Expenses
Exclusions: When Section I Does Not Apply ...........4
Persons Insured: Who Is Covered ............................4
Financial Responsibility Laws ................................5
Out Of State Insurance .........................................5
Limits Of Liability .................................................5
Other Insurance ....................................................5
Conditions.............................................................5
    Notice
    Two Or More Autos
    Assistance And Cooperation Of The Insured
    Action Against Us
    Subrogation

**SECTION II**

Automobile Medical Payments Coverage
Protection For You And Your Passengers For Medical
Expenses

Definitions .............................................................6
Payments We Will Make .........................................6
Exclusions: When Section II Does Not Apply...........6
Limit Of Liability ...................................................6
Other Insurance .....................................................6
Conditions..............................................................6
    Notice
    Two Or More Autos
    Action Against Us
    Medical Reports - Proof And Payment Of Claims
    Subrogation

**SECTION III**

Physical Damage Coverages
Your Protection For Loss Of Or Damage To Your Car

Definitions .............................................................7
Losses We Will Pay .................................................7
    Comprehensive Coverage ..................................7
    Collision Coverage .............................................8
Additional Payments We Will Make Under The
    Physical Damage Coverages ...............................8
    Car Rental If Your Car Is Stolen
Exclusions: When The Physical Damage
    Coverages Do Not Apply ...................................8
Limit Of Liability ...................................................8
Other Insurance .....................................................9

Page

Conditions.............................................................9
    Notice
    Two Or More Autos
    Assistance And Cooperation Of The Insured
    Action Against Us
    Insured's Duties In Event Of Loss
    Appraisal
    Payment Of Loss
    No Benefit To Bailee
    Subrogation

**SECTION IV**

Uninsured Motorists Coverage and Underinsured Motor-
ists Coverage
Your Protection For Injuries Caused By Uninsured, Un-
derinsured And Hit And Run Motorists

Definitions ...........................................................10
Losses We Pay .....................................................11
Exclusions: When Section IV Does Not Apply .......11
Limits Of Liability ...............................................11
Other Insurance ...................................................12
Subrogation..........................................................12
Conditions............................................................12
    Notice
    Assistance And Cooperation Of The Insured
    Proof Of Claim - Medical Reports - Proof of Loss
    Payment Of Loss
    Arbitration

**SECTION V**

General Conditions
The Following Apply To All Coverages In This Policy

Territory ..............................................................13
Premium ..............................................................13
Changes................................................................13
Assignment ..........................................................14
Policy Period.........................................................14
Cancellation By The Insured.................................14
Cancellation By Us ...............................................14
Cancellation By Us Is Limited...............................14
Renewal................................................................14
Other Insurance ...................................................14
Dividend Provision................................................14
Declarations..........................................................15
Fraud And Misrepresentation ...............................15
Examination Under Oath.......................................15
Disposal of Vehicle...............................................15
Terms Of Policy Conformed To Statutes .................15

**SECTION VI**

Amendments And Endorsements

Special Endorsement
    United States Government Employees ..............15

Exhibit __5__
Page __5__ of __21__ Pages

A-30AK (6-99)

Whenever, "he," "his," "him," "himself" appears in this policy, you may read "she," "her," "hers," or "herself."

## AGREEMENT

We, the Company named in the declarations attached to this policy, make this agreement with you, the policyholder. Relying on the information you have furnished and the declarations attached to this policy and if you pay your premium when due, we will do the following:

## SECTION I

Liability Coverages
Your Protection Against Claims From Others
Bodily Injury Liability
Property Damage Liability

### DEFINITIONS

The words italicized in Section I of this policy are defined below.

1. *"Auto business"* means the business of selling, repairing, servicing, storing, transporting or parking of autos.

2. *"Bodily injury"* means bodily injury to a person, including resulting sickness, disease or death.

3. *"Farm auto"* means a truck type vehicle with a load capacity of 2000 pounds or less, not used for commercial purposes other than farming.

4. *"Insured"* means a person or organization described under PERSONS INSURED.

5. *"Non-owned auto"* means an automobile or *trailer* not owned by or furnished for the regular use of either *you* or a *relative*, other than a *temporary substitute auto*. An auto rented or leased for more than 30 days will be considered as furnished for regular use.

6. *"Owned auto"* means:

   (a) a vehicle described in this policy for which a premium charge is shown for these coverages;
   (b) a *trailer* owned by *you*;
   (c) a *private passenger, farm* or *utility auto*, ownership of which *you* acquire during the policy period or for which *you* enter into a lease during the policy period for a term of six months or more, if

      (i) it replaces an *owned auto* as defined in (a) above; or
      (ii) we insure all *private passenger, farm* and *utility autos* owned or leased by *you* on the date of the acquisition, and *you* ask us to add it to the policy no more than 30 days later;

   (d) a *temporary substitute auto.*

7. *"Private passenger auto"* means a four-wheel private passenger, station wagon or jeep-type auto.

8. *"Relative"* means a person related to *you* who resides in *your* household.

9. *"Temporary substitute auto"* means an automobile or *trailer*, not owned by *you*, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the *owned auto* or *trailer* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

10. *"Trailer"* means a trailer designed to be towed by a *private passenger auto*, if not being used for business or commercial purposes with a vehicle other than a *private passenger, farm* or *utility auto*.

11. *"Utility auto"* means a vehicle, other than a *farm auto*, with a load capacity of 2000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.

12. *"War"* means armed conflict between nations, whether or not declared, civil war, insurrection, rebellion or revolution.

13. *"You"* means the policyholder named in the declarations and his or her spouse if a resident of the same household.

### LOSSES WE WILL PAY FOR YOU UNDER SECTION I

Under Section I, we will pay damages which an *insured* becomes legally obligated to pay because of:

1. *bodily injury*, sustained by a person, and;

2. damage to or destruction of property, arising out of the ownership, maintenance or use of the *owned auto* or a *non-owned auto*. We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit.

### ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

1. All investigative and legal costs incurred by us.

2. All court costs charged to an *insured* in a covered lawsuit, except that attorney fee payments shall not exceed the amount that could be awarded in accordance with the percentage schedule for contested cases as specified in Alaska Rule of Civil Procedure 82(b)(1) in a case in which a judgment equal to the liability policy limit or limits applicable to the loss is rendered.

If a judgment is rendered in excess of *your* liability policy limits, *you* will be responsible for attorney fees awarded in accordance with Alaska Rule of Civil Procedure 82(b)(1) which exceed that which would be

Exhibit 5
Page 6 of 21 Pages                    A-30AK(6-99)  Page 3 of 16

allowable under the schedule for contested cases if the judgment rendered was within *your* policy limit.

**3.** All interest on that amount of a judgment which is within our limit of liability accruing after the entry of judgment until we have paid, offered or deposited in court that part of the judgment not exceeding the limit of our liability.

**4.** Premiums for appeal bonds in a suit we appeal, or premiums for bonds to release attachments; but the face amount of these bonds may not exceed the applicable limit of our liability.

**5.** Premiums for bail bonds paid by an *insured* due to traffic law violations arising out of the use of an insured auto, not to exceed $250 per bail bond.

**6.** Costs incurred by any *insured* for first aid to others at the time of an accident involving an insured auto.

**7.** Loss of earnings up to $50 a day, but not other income, if we request an *insured* to attend hearings and trials.

**8.** All reasonable costs incurred by an *insured* at our request.

## EXCLUSIONS

### When Section I Does Not Apply

We will not defend any suit for damage if one or more of the exclusions listed below applies.

**1.** Section I does not apply to any vehicle used to carry passengers or goods for hire. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

**2.** *Bodily injury* or property damage caused intentionally by or at the direction of an *insured* is not covered.

**3.** We do not cover *bodily injury* or property damage that is insured under a nuclear liability policy.

**4.** *Bodily injury* or property damage arising from the operation of farm machinery is not covered.

**5.** *Bodily injury* to an employee of an *insured* arising out of and in the course of employment by an *insured* is not covered.

However, *bodily injury* of a domestic employee of the *insured* is covered unless benefits are payable or are required to be provided under a workers' or workmen's compensation law.

**6.** We do not cover *bodily injury* to a fellow employee of an *insured* if the fellow employee's *bodily injury* arises from the use of an auto while in the course of employment and if workers' compensation or other similar coverage is available. We will defend *you* if suit is brought by a fellow employee against *you* alleging use, ownership or maintenance of an auto by *you*.

**7.** We do not cover an *owned auto* while used by a person (other than *you* or a *relative*) when he is employed or otherwise engaged in the *auto business*.

**8.** A *non-owned auto* while maintained or used by any person is not covered while such person is employed or otherwise engaged in (1) any *auto business* if the accident arises out of that business; (2) any other business or occupation of any *insured* if the accident arises out of that business or occupation, except a *private passenger auto* used by *you* or *your* chauffeur or domestic servant while engaged in such other business.

**9.** We do not cover damage to:

(a) property owned, operated or transported by an *insured*; or

(b) property rented to or in charge of an *insured* other than a residence, private garage or motor vehicle rented by the *insured*.

**10.** We do not cover an auto acquired by *you* during the policy term, if *you* have purchased other liability insurance for it.

**11.** We do not cover:

(a) the United States of America or any of its agencies;

(b) any person, including *you*, if protection is afforded under the provisions of the Federal Tort Claims Act.

**12.** We do not cover *bodily injury* or property damage that results from the operation of a *non-owned auto* or *temporary substitute auto* that is designed for use principally off public roads that is not registered for use on public roads.

**13.** We do not cover punitive or exemplary damages awarded due to a loss where the *insured* was legally intoxicated or under the influence of illegal narcotics at the time of loss.

## PERSONS INSURED

### Who Is Covered

Section I applies to the following as *insureds* with regard to an *owned auto*:

**1.** *you* and *your relatives*;

**2.** any other person using the auto with *your* permission. The actual use must be within the scope of that permission;

**3.** any other person or organization for his or its liability because of acts or omissions of an *insured* under 1. or 2. above.

Exhibit ___5___
Page ___7___ of __21__ Pages                A-30AK(6-99)  Page 4 of 16

Section I applies to the following with regard to a *non-owned auto*:

1. (a) *you*;
   (b) *your relatives* when using a *private passenger, farm* or *utility auto* or *trailer*.

Such use by *you* or *your relatives* must be with the permission, or reasonably believed to be with the permission, of the owner and within the scope of that permission;

2. a person or organization, not owning or hiring the auto, regarding his or its liability because of acts or omissions of an *insured* under 1. above.

The limits of liability stated in the declarations are our maximum obligations regardless of the number of *insureds* involved in the occurrence.

## FINANCIAL RESPONSIBILITY LAWS

When this policy is certified as proof of financial responsibility for the future under the provisions of a motor vehicle financial responsibility law, this liability insurance will comply with the provisions of that law. The *insured* agrees to reimburse us for payments made by us which we would not have had to make except for this agreement.

## OUT OF STATE INSURANCE

When the policy applies to the operation of a motor vehicle outside of *your* state, we agree to increase *your* coverages to the extent required of out-of-state motorists by local law. This additional coverage will be reduced to the extent that *you* are protected by another insurance policy. No person can be paid more than once for any item of loss.

## LIMITS OF LIABILITY

Regardless of the number of autos or *trailers* to which this policy applies:

1. The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one person as the result of one occurrence.

2. The limit of such liability stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of *bodily injury* sustained by two or more persons as the result of any one occurrence.

3. The limit of property damage liability stated in the declarations as applicable to "each occurrence" is the total limit of our liability for all damages because of injury to or destruction of the property of one or more persons or organizations, including the loss of use of the property as the result of any one occurrence.

## OTHER INSURANCE

If the *insured* has other insurance against a loss covered by Section I of this policy, we will not owe more than our pro-rata share of the total coverage available.

This policy is excess over any other valid and collectible insurance that applies to a *temporary substitute* or *non-owned auto*. If, however, the *temporary substitute* or *non-owned auto* is a rented motor vehicle, this policy provides primary coverage only if the operator of the *temporary substitute* or *non-owned auto* did not purchase insurance coverage from the person or organization from whom the vehicle was rented.

## CONDITIONS

The following conditions apply to Section I:

1. NOTICE

As soon as possible after an occurrence, written notice must be given us or our authorized agent stating:

   (a) the identity of the insured;
   (b) the time, place and details of the occurrence;
   (c) the names and addresses of the injured, and of any witnesses; and
   (d) the names of the owners and the description and location of any damaged property.

If a claim or suit is brought against an *insured*, he must promptly send us each demand, notice, summons or other process received.

2. TWO OR MORE AUTOS

If this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached *trailer* are considered to be one auto.

3. ASSISTANCE AND COOPERATION OF THE INSURED

The *insured* will cooperate and assist us, if requested:

   (a) in the investigation of the occurrence;
   (b) in making settlements;
   (c) in the conduct of suits;
   (d) in enforcing any right of contribution or indemnity against any legally responsible person or organization because of *bodily injury* or property damage;
   (e) at trials and hearings;
   (f) in securing and giving evidence; and
   (g) by obtaining the attendance of witnesses.

Only at his own cost will the *insured* make a payment, assume any obligation or incur any cost other than for first aid to others.

4. ACTION AGAINST US

No suit will lie against us:

   (a) unless the *insured* has fully complied with all the policy's terms and conditions, and

Exhibit ___5___
Page __8__ of __21__ Pages                         A-30AK(6-99)  Page 5 of 16

(b) until the amount of the *insured's* obligation to pay has been finally determined, either:

    (i) by a final judgment against the *insured* after actual trial; or

    (ii) by written agreement of the *insured*, the claimant and us.

A person or organization or the legal representative of either, who secures a judgment or written agreement, may then sue to recover up to the policy limits.

No person or organization, including the *insured*, has a right under this policy to make us a defendant in an action to determine the *insured's* liability.

Bankruptcy or insolvency of the *insured* or his estate will not relieve us of our obligations.

### 5. SUBROGATION

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The insured will help us to enforce these rights. The *insured* will do nothing after loss to prejudice these rights.

This means we will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible.

## SECTION II

### Auto Medical Payments

Protection For You And Your Passengers For Medical Expenses

### DEFINITIONS

The definitions of terms shown under Section I apply to this Coverage. In addition, under this Coverage, *occupying* means in or upon or entering into or alighting from.

### PAYMENTS WE WILL MAKE

Under this Coverage, we will pay all reasonable expenses actually incurred by an *insured* within one year from the date of accident for necessary medical, surgical, x-ray, dental services, prosthetic devices, ambulance, hospital, professional nursing and funeral services. The one year limit does not apply to funeral services.

This Coverage applies to:

1. *you* and each *relative* who sustains *bodily injury* caused by accident:

    (a) while *occupying* the *owned auto*; or

    (b) while *occupying* a *non-owned auto* if *you* or *your relative* reasonably believe *you* have the owner's permission to use the auto and the use is within the scope of that permission; or

    (c) when struck as a pedestrian by an auto or *trailer*.

2. any other person who sustains *bodily injury* caused by accident while *occupying* the *owned auto* while be-

ing used by *you*, a resident of *your* household, or other persons with *your* permission.

### EXCLUSIONS

**When Section II Does Not Apply**

1. There is no coverage for *bodily injury* sustained by any occupant of an *owned auto* used to carry passengers or goods for hire. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

2. There is no coverage for an *insured* while *occupying* a vehicle located for use as a residence or premises.

3. *You* and *your relatives* are not covered for *bodily injury* sustained while *occupying* or when struck by:

    (a) a farm-type tractor or other equipment designed for use principally off public roads, while not upon public roads; or

    (b) a vehicle operated on rails or crawler-treads.

4. There is no coverage for persons employed in the *auto business*, if the accident arises out of that business and if benefits are required to be provided under a workers' compensation law.

5. There is no coverage for *bodily injury* sustained due to *war*.

6. The United States of America or any of its agencies are not covered as an *insured*, a third party beneficiary, or otherwise.

### LIMIT OF LIABILITY

The limit of liability for medical payments stated in the declarations as applying to "each person" is the limit we will pay for all costs incurred by or on behalf of each person who sustains *bodily injury* in one accident. This applies regardless of the number of persons insured or the number of autos or *trailers* to which this policy applies.

### OTHER INSURANCE

If the *insured* has other medical payments insurance against a loss covered by Section II of this policy, we will not owe more than our pro rata share of the total coverage available.

Any insurance we provide to a person who sustains *bodily injury* while *occupying* a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

### CONDITIONS

The following conditions apply to this Coverage:

1. NOTICE

As soon as possible after an accident, written notice must be given us or our authorized agent stating:

    (a) the identity of the *insured*;

    (b) the time, place and details of the accident; and

(c) the names and addresses of the injured, and of any witnesses.

### 2. TWO OR MORE AUTOS

If this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached *trailer* are considered to be one auto.

### 3. ACTION AGAINST US

Suit will not lie against us unless the *insured* has fully complied with all the policy terms.

### 4. MEDICAL REPORTS - PROOF AND PAYMENT OF CLAIMS

As soon as possible, the injured person or his representative will furnish us with written proof of claim, under oath if required. After each request from us, he will give us written authority to obtain medical reports and copies of records.

The injured person will submit to an examination by doctors chosen by us and at our expense as we may reasonably require.

We may pay either the injured person, the doctor or other persons or organizations rendering medical services. These payments are made without regard to fault or legal liability of the *insured*.

### 5. SUBROGATION

When we make a payment under this coverage, we will be subrogated (to the extent of payment made by us) to the rights of recovery the injured person or anyone receiving the payments may have against any person or organization. Such person will do whatever is necessary to secure our rights and will do nothing to prejudice them.

This means we will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible.

## SECTION III

### Physical Damage Coverages

#### Your Protection For Loss Or Damage To Your Car

### DEFINITIONS

The definitions of the terms "*auto business*", "*farm auto*", "*private passenger auto*", "*relative*", "*temporary substitute auto*", "*utility auto*", "*you*" and "*war*" under Section I apply to Section III also. Under this Section, the following special definitions apply:

**1.** "*Actual cash value*" is the replacement cost of the auto or property less *depreciation* or *betterment*.

**2.** "*Betterment*" is improvement of the auto or property to a value greater than its pre-loss condition.

**3.** "*Collision*" means *loss* caused by upset of the covered auto or its collision with another object, including an attached vehicle.

**4.** "*Depreciation*" means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness or other causes.

**5.** "*Insured*" means:

(a) regarding the *owned auto*:

(i) *you* and *your relatives*;
(ii) a person or organization maintaining, using or having custody of the auto with *your* permission, if his use is within the scope of that permission.

(b) regarding a *non-owned auto*; *you* and *your relatives*, using the auto, if the actual operation or use is with the permission or reasonably believed to be with the permission of the owner and within the scope of that permission.

**6.** "*Loss*" means direct and accidental loss of or damage to:

(a) the auto, including its equipment; or
(b) other insured property.

**7.** "*Non-owned auto*" means a *private passenger, farm* or *utility auto* or *trailer* not owned by or furnished for the regular use of either *you* or *your relatives*, except a *temporary substitute auto*. *You* or *your relative* must be using the auto or trailer within the scope of permission given by its owner. An auto rented or leased for more than 30 days will be considered as furnished for regular use.

**8.** "*Owned auto*" means:

(a) any vehicle described in this policy for which a specific premium charge indicates there is coverage;
(b) a *private passenger, farm* or *utility auto* or a *trailer*, ownership of which is acquired by *you* during the policy period or for which *you* enter into a lease during the policy period for a term of six months or more; if

(i) it replaces an *owned auto* as described in (a) above, or
(ii) we insure all *private passenger, farm, utility autos* and *trailers* owned or leased by *you* on the date of such acquisition and *you* request us to add it to the policy within 30 days afterward;

(c) a *temporary substitute auto*.

**9.** "*Trailer*" means a trailer designed for use with a *private passenger auto* and not used as a home, office, store, display or passenger trailer.

### LOSSES WE WILL PAY FOR YOU

#### Comprehensive (Excluding *Collision*)

**1.** We will pay for each *loss*, less the applicable deductible, caused other than by *collision*, to the *owned* or

*non-owned auto.* This includes breakage of glass and *loss* caused by:

(a) missiles;
(b) falling objects;
(c) fire;
(d) lightning;
(e) theft;
(f) larceny;
(g) explosion;
(h) earthquake;
(i) colliding with a bird or animal;
(j) windstorm;
(k) hail;
(l) water;
(m) flood;
(n) malicious mischief;
(o) vandalism;
(p) riot; or
(q) civil commotion.

No deductible will apply to *loss* caused by fire, lightning, smoke, smudge, or damage sustained while the vehicle is being transported on any conveyance.

At the option of the *insured*, breakage of glass caused by *collision* may be paid under the Collision Coverage, if included in the policy.

2. We will pay, up to $200 per occurrence, less any deductible shown in the declarations, for *loss* to personal effects due to:

(a) fire;
(b) lightning;
(c) flood;
(d) theft of the entire automobile;
(e) falling objects;
(f) earthquake; or
(g) explosion.

The property must be owned by *you* or a *relative*, and must be in or upon an *owned auto.*

No deductible will apply due to *loss* by fire or lightning.

3. *Losses* arising out of a single occurrence shall be subject to no more than one deductible.

*Collision*

1. We will pay for *collision loss* to the *owned* or *non-owned auto* for the amount of each *loss* less the applicable deductible.

2. We will pay up to $200 per occurrence, less the applicable deductible, for *loss* to personal effects due to a *collision*. The property must be owned by *you* or a *relative*, and must be in or upon an *owned auto.*

3. *Losses* arising out of a single occurrence shall be subject to no more than one deductible.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES

1. We will reimburse the *insured* for transportation expenses incurred during the period beginning 48 hours after a theft of the entire auto covered by Comprehensive Coverage under this policy has been reported to us and the police. Reimbursement ends when the auto is returned to use or we pay for the *loss.*

Reimbursement will not exceed $20 per day nor $600 per *loss.*

2. We will pay general average and salvage charges for which the *insured* becomes legally liable when the auto is being transported.

3. We will pay for *loss* to any of the following equipment (including *loss* to accessories and antennas):

(a) car phone;
(b) citizen's band radio;
(c) two-way mobile radio;
(d) scanning monitor receiver; or
(e) device designed for the recording and/or reproduction of sound.

We will pay only if the equipment at the time of *loss:*

(a) is permanently installed in or upon an *owned auto*; and
(b) that auto is insured under the appropriate coverage.

## EXCLUSIONS

### When The Physical Damage Coverages Do Not Apply

1. An auto used to carry passengers or goods for hire is not covered. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

2. *Loss* due to *war* is not covered.

3. We do not cover *loss* to a *non-owned auto* when used by the *insured* in the *auto business.*

4. There is no coverage for *loss* caused by and limited to wear and tear, freezing, mechanical or electrical breakdown or failure, unless that damage results from a covered theft.

5. Tires, when they alone are damaged by *collision*, are not covered.

6. *Loss* due to radioactivity is not covered.

7. *Loss* to any tape, wire, record disc or other medium for use with a device designed for the recording and/or reproduction of sound is not covered.

8. We do not cover *loss* to any radar or laser detector.

9. We do not cover *trailers* when used for business or commercial purposes with vehicles other than *private passenger, farm* or *utility autos.*

10. We do not cover loss to an *owned auto* or *non-owned auto* that results from destruction or confiscation by governmental or civil authorities because *you,* a *relative* or anyone else engaged in illegal activities.

## LIMIT OF LIABILITY

The limit of our liability for *loss:*

1. is the *actual cash value* of the property at the time of the *loss;*

2. will not exceed the cost to repair or replace the property, or any of its parts, with other of like kind and quality and will not include compensation for any diminution

Exhibit ___5___

Page __11__ of __21__ Pages        A-30AK(6-99)  Page 8 of 16

in the property's value that is claimed to result from the *loss;*

3. to personal effects arising out of one occurrence is $200;

4. to a *trailer* not owned by *you* is $500;

5. for custom options is limited to the *actual cash value* of equipment, furnishings or finishings (including paint) installed in or upon the vehicle only by the auto factory or an authorized auto dealer and included in the purchase price of the vehicle.

*Actual cash value* of property will be determined at the time of the *loss* and will include an adjustment for *depreciation/betterment* and for the physical condition of the property.

OTHER INSURANCE

If the *insured* has other insurance against a *loss* covered by Section III, we will not owe more than our pro-rata share of the total coverage available.

This policy is excess over any other valid and collectible insurance that applies to a *temporary substitute* or *non-owned auto.* If, however, the *temporary substitute* or *non-owned auto* is a rented motor vehicle, this policy provides primary coverage only if the operator of the *temporary substitute* or *non-owned auto* did not purchase insurance coverage from the person or organization from whom the vehicle was rented.

CONDITIONS

The following conditions apply only to the Physical Damage Coverages:

1. NOTICE

As soon as possible after a *loss,* written notice must be given us or our authorized agent stating:

   (a) the identity of the *insured;*
   (b) a description of the auto or *trailer;*
   (c) the time, place and details of the *loss;* and
   (d) the names and addresses of any witnesses.

In case of theft, the *insured* must promptly notify the police.

2. TWO OR MORE AUTOS

If this policy covers two or more autos or *trailers,* the limit of coverage and any deductibles apply separately to each.

3. ASSISTANCE AND COOPERATION OF THE *INSURED*

The *insured* will cooperate and assist us, if requested:

   (a) in the investigation of the *loss;*
   (b) in making settlements;
   (c) in the conduct of suits;

   (d) in enforcing any right of subrogation against any legally responsible person or organization;
   (e) at trials and hearings;
   (f) in securing and giving evidence; and
   (g) by obtaining the attendance of witnesses.

4. ACTION AGAINST US

Suit will not lie against us unless the policy terms have been complied with and until 30 days after proof of loss is filed and the amount of *loss* is determined.

5. *INSURED'S* DUTIES IN EVENT OF *LOSS*

In the event of *loss* the *insured* will:

   (a) Protect the auto, whether or not the *loss* is covered by this policy. Further *loss* due to the *insured's* failure to protect the auto will not be covered. Reasonable expenses incurred for this protection will be paid by us.
   (b) File with us, within 91 days after *loss,* his sworn proof of loss including all information we may reasonably require.
   (c) At our request, the *insured* will exhibit the damaged property.

6. APPRAISAL

If we and the *insured* do not agree on the amount of *loss,* either may, within 60 days after proof of loss is filed, demand an appraisal of the *loss.* In that event, we and the *insured* will each select a competent appraiser. The appraisers will select a competent and disinterested umpire. The appraisers will state separately the *actual cash value* and the amount of the *loss.* If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of *loss.* We and the *insured* will each pay his chosen appraiser and will bear equally the other expenses of the appraisal and umpire.

We will not waive our rights by any of our acts relating to appraisal.

7. PAYMENT OF *LOSS*

We may at our option:

   (a) pay for the *loss;* or
   (b) repair or replace the damaged or stolen property.

At any time before the *loss* is paid or the property replaced, we may return any stolen property to *you* or to the address shown in the declarations at our expense with payment for covered damage. We may take all or part of the property at the agreed or appraised value, but there will be no abandonment to us. We may settle claims for *loss* either with the *insured* or the owner of the property.

8. NO BENEFIT TO BAILEE

This insurance does not apply directly or indirectly to the benefit of a carrier or other bailee for hire liable for the *loss* of the auto.

Exhibit ___5___

Page __12__ of __21__ Pages

A-30AK(6-99)    Page 9 of 16

9.  SUBROGATION

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after *loss* to prejudice these rights.

This means we will have the right to sue for or otherwise recover the *loss* from anyone else who may be held responsible.

SECTION IV

Uninsured Motorists Coverage and Underinsured Motorists Coverage

Protection For *You* And *Your* Passengers For Injuries Caused By Uninsured, Underinsured And Hit-And-Run Motorists

DEFINITIONS

The definitions of terms for Section I apply to Section IV except for the following special definitions:

1.  *"Hit And Run Motor Vehicle"* means a motor vehicle causing *bodily injury* to an *insured* or property damage to an *insured auto*, through physical contact with him or with an auto he is *occupying* at the time of the accident and whose operator or owner cannot be identified, provided the *insured* or someone on his behalf:

    (a)  reports the accident within 24 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles;
    (b)  files with us within 30 days a statement setting forth the facts of the accident and claiming that he has a cause of action for damages against an unidentified person; and
    (c)  makes available for inspection, at our request, the auto *occupied* by the *insured* at the time of the accident.

2.  *"Insured"* means:

    (a)  *you;*
    (b)  *your relatives* if residents of *your* household;
    (c)  any other person while *occupying* an *insured auto;*
    (d)  any person who is entitled to recover damages because of *bodily injury* sustained by an *insured* under (a), (b), and (c) above.

    If there is more than one *insured,* our limits of liability will not be increased.

3.  *"Insured Auto"* is an auto:

    (a)  described in the declarations and covered by the bodily injury and property damage liability coverage of this policy;
    (b)  temporarily substituted for an *insured auto* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;

    (c)  operated by *you.*

    But the term *"insured auto"* does not include:

    (i)  an auto used to carry passengers or goods for hire except in a car pool;
    (ii)  an auto being used without the owner's permission; or
    (iii)  under subparagraphs (b) and (c) above, an auto owned by or furnished for the regular use of an *insured.*

4.  "Occupying" means in, upon, getting into or getting out of.

5.  *"State"* includes the District of Columbia, the territories and possessions of the United States and the Provinces of Canada.

6.  *"Uninsured Motor Vehicle"* means:

    (a)  a motor vehicle which has no bodily injury and property damage liability bond, policy of insurance or cash or securities on file to cover *bodily injury,* at the time of the accident; or
    (b)  a motor vehicle, including a farm-type tractor or equipment while it is being used on public roads, which has bodily injury and property damage liability insurance in effect at the time of the accident, but the insurer of the vehicle, the legally authorized self insured owner or operator of the vehicle, or the government entity that owns the vehicle legally denies coverage or becomes insolvent; or

    (c)  a *hit and run motor vehicle* as defined.

    The term *"uninsured motor vehicle"* does not include:

    (a)  an *insured auto;*
    (b)  a motor vehicle owned or operated by a legally authorized self insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law, except as shown in part (b) under the definition of *"uninsured motor vehicle"* above;
    (c)  a motor vehicle owned by the United States of America, any other national government, a *state,* or a political sub-division of any such government or its agencies, except as shown in part (b) under the definition of *"uninsured motor vehicle"* above;
    (d)  a land motor vehicle or *trailer* operated on rails or tracks or located for use as a residence or premises; and
    (e)  a farm-type tractor or equipment designed for use principally off public roads, except while used upon public roads, except as shown in part (b) under the definition of *"uninsured motor vehicle"* above.

7. *"Underinsured motor vehicle"* means a motor vehicle licensed for highway use with respect to the ownership, operation, maintenance, or use for which there is a bodily injury or property damage insurance policy or bond applicable at the time of the accident and the amount of insurance or bond is less than the amount the *insured* is legally entitled to recover for *bodily injury* or property damage from the owner or operator of the *underinsured motor vehicle*.

## LOSSES WE PAY

We will pay damages for *bodily injury*, caused by an accident, which the *insured* is legally entitled to recover from the owner or operator of an *uninsured motor vehicle*, an *underinsured motor vehicle*, or a *hit and run motor vehicle* arising out of the ownership, maintenance or use of that vehicle.

We will pay for property damages to an *insured auto*, caused by an accident, which the *insured* is legally entitled to recover from the owner or operator of an *uninsured motor vehicle*, *underinsured motor vehicle*, or a *hit and run motor vehicle* arising out of the ownership, maintenance or use of that vehicle.

This coverage will not apply to *bodily injury* of an *insured* or property damage of an *insured* until the limits of liability of all bodily injury and property damage liability bonds and policies that apply have been used up by payments, judgments, or settlements. Nor will this coverage apply if the *insured* has resolved a claim and impaired our right to recover our payment from any person or organization from whom the *insured* is legally entitled to recover.

## EXCLUSIONS

### When Section IV Does Not Apply

1. This coverage does not apply to *bodily injury* or to property damage sustained by any *insured* while *occupying* or through being struck by an auto owned by *you* or a *relative* that is not an *insured auto*.

2. This coverage shall not apply to the benefit of any workmen's compensation carrier, disability benefits carrier or any person qualified as a legally authorized self-insurer under any workmen's compensation or disability law or similar law.

3. This coverage shall not apply to the benefit of any property insurer.

4. This coverage does not apply to the first two hundred and fifty dollars of the total amount of all property damage as the result of any one accident.

5. his coverage shall not apply to the loss of use to an *insured auto*.

6. This coverage shall not apply to personal property located on or inside the *insured auto*.

7. Regardless of any other provision of this policy, there is no coverage for punitive or exemplary damages.

## LIMITS OF LIABILITY

Regardless of the number of *insured autos* or *trailers* to which this policy applies:

1. The limit of liability for Uninsured and Underinsured Motorist coverage shown in the declarations as applicable to "each person" is the limit of our liability for all damages, including those for care or loss of services, due to *bodily injury* to one person as the result of one accident.

2. The limit of liability for Uninsured and Underinsured Motorist coverage shown in the declarations as applicable to "each accident" is, subject to the above provision respecting each person, the total limit of our liability for all damages, including damages for care and loss of services, because of *bodily injury* to two or more persons as the result of one accident.

3. The limit of liability for Uninsured and Underinsured Motorist Property Damage coverage shown in the declarations as applicable to "each accident" is the total limit of our liability for all damages because of property damage to all property of one or more *insureds* as the result of any one accident. This limit is subject to the provisions of Exclusion 5.

4. The maximum limit of liability of the insurance carrier under the Uninsured/Underinsured Motorist coverage required to be offered shall be the lesser of:

    (a) The difference between the amount of the *insured's* damages for *bodily injury* and property damage and the amount paid to the *insured* by or for a person who is or may be legally liable for the damages; and

    (b) The applicable limit of liability of the Uninsured and Underinsured Motorist coverage.

5. When coverage is afforded to two or more autos, the limits of liability for Uninsured/Underinsured Motorist coverage shall apply separately to each auto as stated in the declarations but shall not exceed the highest limit of liability applicable to one auto.

When coverage is afforded for Uninsured or Underinsured Motorist coverage under more than one motor vehicle policy issued by the same insurer, the maximum amount payable is limited to the highest limit of any one coverage under the policy.

6. Any amount payable under the Uninsured/Underinsured Motorist coverage shall be excess to any amount payable under automobile bodily injury, death or medical payments coverage, or as worker's compensation benefits and may not duplicate amounts paid or payable under valid and collectible automobile bodily injury, death, or medical payments coverage or as worker's compensation benefits.

Exhibit ___5___

Page __14__ of __21__ Pages

A-30AK(6-99)    Page 11 of 16

7.   This coverage will not apply to *bodily injury* of an *insured* or property damage of an *insured* until the limits of liability of all bodily injury and property damage liability bonds and policies that apply have been used up by payments, judgments, or settlements.

8.   This section limits coverage for attorney fees under Alaska Rule of Civil Procedure 82. In any suit in Alaska in which a claim under this coverage is asserted, our obligation under the coverage to pay attorney's fees taxable as costs is limited as follows:

Alaska Rule of Civil Procedure 82 provides that an injured person may recover a portion of his attorney's fees from the person, party or entity legally responsible for his injury. The amount that may be collected is set forth in Alaska Rule of Civil Procedure 82. As a part of this coverage, attorney's fees that an *insured* may collect under Alaska Rule of Civil Procedure 82 are subject to the following limitation:

We will not pay that portion of any attorney's fee that is in excess of the fees calculated by applying the schedule for contested cases in Alaska Rule of Civil Procedure 82(b)(1) to the limit of liability of this coverage. This limitation means that potential attorney's fees that could be awarded against an uninsured or underinsured motorist may not be covered in full.

OTHER INSURANCE

If an *insured* is entitled to Uninsured or Underinsured Motorist coverage under more than one coverage when two or more vehicles are insured under one policy, the maximum amount payable may not exceed the highest limit of any one coverage under the policy.

If a person as the named insured is entitled to Uninsured or Underinsured Motorist coverage under more than one motor vehicle policy issued by the same insurer, the maximum amount payable may be limited to the highest limit of any one coverage under the policies.

If an *insured* is entitled to Uninsured or Underinsured Motorist coverage under more than one policy providing motor vehicle liability coverage, payments will be made in the following order of priority, subject to the limit of liability of each applicable policy or coverage:

1.   A policy or coverage covering a motor vehicle *occupied* by the injured person or a policy or coverage covering a pedestrian as a named insured.

2.   A policy or coverage covering a motor vehicle *occupied* by the injured person as an *insured* other than as a named insured.

3.   A policy or coverage not covering a motor vehicle *occupied* by the injured person but covering the injured person as a named insured.

4.   A policy or coverage not covering a motor vehicle *occupied* by the injured person but covering the injured

person as an *insured* other than as a named insured.

5.   A policy or coverage covering, as excess, umbrella, or similar insurance, a motor vehicle *occupied* by the injured person or a policy or coverage covering, as excess, umbrella, or similar insurance, a pedestrian as a named insured.

6.   A policy or coverage not covering a motor vehicle *occupied* by the injured person but covering, as excess, umbrella, or similar insurance, the injured person as the named insured.

7.   A policy or coverage not covering a motor vehicle *occupied* by the injured person but covering, as excess, umbrella, or similar insurance, the injured person as an *insured* other than as a named insured.

SUBROGATION

If we make payment under the policy and the *insured* had or has a right to recover damages from another, we shall be subrogated to that right. This means that we will have the right to seek recovery of any payment we make from any person, party or entity who may be held responsible. However our right to recover is secondary to the *insured's* right to be compensated fully for his damages.

The *insured* will do nothing to prejudice our rights to pursue subrogation, and will cooperate with us to enforce these rights.

CONDITIONS

The following conditions apply only to the Uninsured Motorists coverage and Underinsured Motorists coverage:

1.   NOTICE

As soon as possible after an accident, notice must be given us or our authorized agent stating:

(a)  the identity of the *insured*;
(b)  the time, place and details of the accident;
(c)  the names and addresses of the injured, and of any witnesses.

If the *insured* or his legal representative files suit before we make a settlement under this coverage, he must immediately provide us with a copy of the pleadings.

2.   PROOF OF CLAIM - MEDICAL REPORTS - PROOF OF LOSS

As soon as possible, the *insured* or other person making claim must give us written proof of claim, under oath if required. This will include details of the nature and extent of injuries, treatment and other facts which may affect the amount payable.

The *insured* and other persons making claim must submit to examination under oath by any person named by us, when and as often as we may reasonably require,

Exhibit ___5___
Page __15__ of __21__ Pages          A-30AK(6-99)   Page 12 of 16

at which time the *insured* or other persons may have their attorney present. Proof of claim must be made on forms furnished by us unless we have not furnished these forms within 15 days after receiving notice of claim.

The injured person will submit to examination by doctors chosen by us, at our expense, as we may reasonably require. At our request, the *insured* shall authorize us to obtain medical reports and copies of records. If he is incapacitated or dead, his legal representative shall provide the authorization.

In the event of a property damage loss, the *insured* shall protect the auto from further loss. Further loss due to failure to protect will not be covered. We will pay for reasonable expenses incurred for the protection of the auto.

The *insured* or other person making a property damage claim shall file a proof of loss with us as soon as practicable. The proof of loss shall be a sworn statement as to the interest of the *insured* and anyone else in the property, any encumbrances upon the property, actual cash value at the time of loss, amount, place, cause and time of loss, and description and amounts of all other insurance covering this property. Upon our request, the *insured* will show us the damaged property.

3. PAYMENT OF LOSS

Any amount due is payable:

(a) to the *insured*, or
(b) to his parent or guardian, if the *insured* is a minor, or
(c) to his surviving spouse, if the *insured* is deceased; otherwise
(d) to a person authorized by law to receive the payment, or to a person legally entitled to recover payment for the damages.

We may, at our option, pay any amount due in accordance with (d) above.

4. ARBITRATION

Except as set forth in the last sentence of this paragraph, any dispute arising between any *insured* and us regarding:

(a) the extent to which the *insured* is legally entitled to recover against an owner or operator of an *uninsured motor vehicle* or *underinsured motor vehicle* (i.e., issues of liability); or
(b) the amount of damages sustained by the *insured*

may be arbitrated. However, neither the *insured* nor we will be required to arbitrate unless arbitration is expressly required by state law. Unless so required, binding arbitration will not be used to resolve disputes regarding policy interpretation, the existence of this coverage in a particular policy, or the application of this coverage to a particular claim or claimant.

We will be obligated to pay no more than the applicable policy limits for this coverage regardless of whether an arbitration results in an award in excess of the applicable policy limits for this coverage as defined in this policy.

Arbitration will not deprive any *insured* of the right to bring action against us to recover any sums due under the terms of the policy. Arbitration will not deprive the courts of this state of jurisdiction against us.

Unless otherwise required by state law, the method, manner and format of any arbitration process will be subject to agreement by *you* and us. All expenses and fees, not including counsel fees or adjuster fees, incurred because of arbitration shall be paid as determined by the neutral arbitrator. Each party may be represented by an attorney at an arbitration.

If a party makes a timely application to the court, an arbitration award may be modified, corrected or vacated as provided by Alaska law.

SECTION V

General Conditions

These conditions apply to all Coverages in this policy.

1. TERRITORY

This policy applies only to accidents, occurrences or losses during the policy period within the United States of America, its territories or possessions, or Canada or when the auto is being transported between ports thereof.

2. PREMIUM

When you dispose of, acquire ownership of, or replace a *private passenger*, *farm* or *utility auto*, any necessary premium adjustment will be made as of the date of the change and in accordance with our manuals.

3. CHANGES

The terms and provisions of this policy cannot be waived or changed, except by an endorsement issued to form a part of this policy.

We may revise this policy during its term to provide more coverage without an increase in premium. If we do so, *your* policy will automatically include the broader coverage when effective in *your* state.

The premium for each auto is based on the information we have in *your* file. *You* agree:

(a) that we may adjust *your* policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed.
(b) that *you* will cooperate with us in determining if this information is correct and complete.
(c) that *you* will notify us of any changes in this information.

Exhibit __5__
Page __16__ of __21__ Pages

A-30AK(6-99)    Page 13 of 16

Any calculation or recalculation of *your* premium or changes in *your* coverage will be based on the rules, rates and forms on file, if required, for our use in *your* state.

### 4. ASSIGNMENT

*Your* rights and duties under this policy may not be assigned without our written consent.

If *you* die, this policy will cover *your* surviving spouse, if covered under the policy prior to *your* death. Until the expiration of the policy term, we will also cover:

(a) the executor or administrator of *your* estate, but only while operating an *owned auto* and only while acting within the scope of his duties; and

(b) any person having proper temporary custody of and operating the *owned auto*, as an *insured*, until the appointment and qualification of the executor or administrator of *your* estate.

### 5. POLICY PERIOD

Unless otherwise cancelled, this policy will expire as shown in the declarations. But, it may be continued by our offer to renew and *your* acceptance prior to the expiration date. Each period will begin and expire at 12:01 A.M. local time at *your* address stated in the declarations.

### 6. CANCELLATION BY THE *INSURED*

*You* may cancel this policy by providing notice to us stating when, after the notice, cancellation will be effective.

If this policy is cancelled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed according to our manuals.

### 7. CANCELLATION BY US

We may cancel this policy by mailing to *you*, at the address shown in this policy, written notice stating when the cancellation will be effective.

We will mail this notice:

(a) 20 days in advance if the proposed cancellation is for non-payment of premium or any of its installments when due;

(b) 30 days in advance in all other cases.

EXCEPTION: 10 days in advance if cancellation is for suspension or revocation of a driver's license.

The mailing or delivery of the above notice will be sufficient proof of notice. The policy will cease to be in effect as of the date and hour stated in the notice.

If this policy is cancelled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed according to our manuals. Payment or tender of unearned premium is not a condition of cancellation.

### 8. CANCELLATION BY US IS LIMITED

After this policy has been in effect for 60 days or, if the policy is a renewal policy, we will not cancel except for any of the following reasons:

(a) *You* do not pay the initial premium on other than a renewal policy or any additional premiums for this policy or fail to pay any premium installment when due to us or our agent.

(b) *Your* driver's license, or that of any customary operator has been under suspension or revocation during the policy period or, if a renewal policy, during the policy period or the 180 days immediately preceding its' effective date. This does not apply to a driver's license revocation under AS 28.15.183 or 28.15.185 for possession or consumption of alcohol in a situation where the person while under 21 years of age was not driving, and was in violation of AS 04.16.050 or a municipal ordinance with substantially similar elements.

(c) You change your principal residence to a state where we do not issue new or renewal automobile insurance policies.

We have the right to modify the Comprehensive Coverage under Section III by including a deductible of not more than $100.

### 9. RENEWAL

We will not refuse to renew this policy unless written notice of our refusal to renew is mailed to *you*, at the address shown in this policy, at least 20 days prior to the expiration date. The mailing or delivery of this notice by us will be sufficient proof of notice. This policy will expire without notice if any of the following conditions exist:

(a) *You* do not pay any premium as we require to renew this policy.

(b) *You* have informed us or our agent that *you* wish the policy to be cancelled or not renewed.

(c) *You* do not accept our offer to renew or *you* refuse to provide us with renewal classification and rating information as we may require.

### 10. OTHER INSURANCE

If other insurance is obtained on *your* insured auto to replace this insurance, any similar insurance afforded under this policy for that auto will terminate on the effective date of the other insurance.

### 11. DIVIDEND PROVISION

*You* are entitled to share in a distribution of the surplus of the Company as determined by its Board of Directors from time to time.

Exhibit __5__

Page __17__ of __21__ Pages

A-30AK(6-99)    Page 14 of 16

12. DECLARATIONS

By accepting this policy, *you* agree that:

(a) the statements in *your* application and in the declarations are *your* agreements and representations;

(b) this policy is issued in reliance upon the truth of these representations; and

(c) this policy, along with the application and declaration sheet, embodies all agreements relating to this insurance. The terms of this policy cannot be changed orally.

13. FRAUD AND MISREPRESENTATION

Coverage is not provided to any person who knowingly conceals or misrepresents any material fact or circumstance relating to this insurance:

(a) at the time of application; or

(b) at any time during the policy period; or

(c) in connection with the presentation or settlement of a claim.

14. EXAMINATION UNDER OATH

The *insured* or any other person seeking coverage under this policy must submit to examination under oath by any person named by us when and as often as we may require. Any person submitting to examination under oath as required by this Condition is entitled to have his own counsel present during such examination.

15. DISPOSAL OF VEHICLE

If *you* relinquish possession of a leased vehicle or if you sell or relinquish ownership of an *owned auto*, any coverage provided by this policy for that vehicle will terminate on the date *you* do so.

16. TERMS OF POLICY CONFORMED TO STATUTES

Any terms of this policy in conflict with the statutes of Alaska are amended to conform to those statutes.

## SECTION VI - AMENDMENTS AND ENDORSEMENTS

1. SPECIAL ENDORSEMENT
UNITED STATES GOVERNMENT EMPLOYEES

A. Under the Property Damage coverage of Section I, we provide coverage to United States Government employees, civilian or military, using

1. Motor vehicles owned or leased by the United States Government or any of its agencies, or

2. Rented motor vehicles used for United States Government business,

when such use is with the permission of the United States Government. Subject to the limits described in paragraph B. below, we will pay sums *you* are legally obligated to pay for damage to these vehicles.

B. The following limits apply to this Coverage:

1. A $100 deductible applies to each occurrence.

2. For vehicles described in A.1. above, our liability shall not exceed the lesser of the following:

a. the *actual cash value* of the property at the time of the occurrence; or

b. the cost to repair or replace the property, or any of its parts with other of like kind and quality; or

c. two months basic pay of the *insured*; or

d. the limit of Property Damage liability coverage stated in the declarations.

3. For vehicles described in A.2. above, our liability shall not exceed the lesser of the following:

a. the *actual cash value* of the property at the time of the occurrence; or

b. the cost to repair or replace the property, or any of its parts with other of like kind and quality; or

c. the limit of Property Damage liability coverage stated in the declarations.

This insurance is excess over other valid and collectible insurance.

J. C. Stewart
Secretary

O. M. Nicely
President

GOVERNMENT EMPLOYEES INSURANCE COMPANY
GEICO CASUALTY COMPANY
GEICO GENERAL INSURANCE COMPANY
GEICO INDEMNITY COMPANY
HOME OFFICE - 5260 Western Avenue
Chevy Chase, Maryland 20815-3799

Exhibit ___5___
Page __18__ of _21_ Pages

A-30AK(6-99)    Page 15 of 16

# NOTICE

## THIS POLICY LIMITS COVERAGE FOR ATTORNEY FEES UNDER ALASKA RULE OF CIVIL PROCEDURE 82

In any suit in Alaska in which we have a right or duty to defend an insured in addition to the limits of liability, our obligation under the applicable coverage to pay attorney fees taxable as costs against the insured is limited as follows:

Alaska Rule of Civil Procedure 82 provides that if you are held liable, some or all of the attorney fees of the person making a claim against you must be paid by you. The amount that must be paid by you is determined by Alaska Rule of Civil Procedure 82. We provide coverage for attorney fees for which you are liable under Alaska Rule of Civil Procedure 82 subject to the following limitation:

> We will not pay that portion of any attorney's fees that is in excess of the fees calculated by applying the schedule for contested cases in Alaska Rule of Civil Procedure 82(b)(1) to the limit of liability of the applicable coverage.

*This limitation means the potential costs that may be awarded against you as attorney fees may not be covered in full. You will have to pay any attorney fees not covered directly.*

For example, the attorney fees provided by the schedule for contested cases in Alaska Rule of Civil Procedure 82(b)(1) are:

> 20% of the first $25,000 of a judgment;
> 10% of the amounts over $25,000 of a judgment.

Therefore, if a court awards a judgment against you in the amount of $125,000, in addition to that amount, you would be liable under Alaska Rule of Civil Procedure 82(b)(1) for attorney fees of $15,000, calculated as follows:

| | |
|---|---|
| 20% of $ 25,000 | $ 5,000 |
| 10% of $100,000 | $10,000 |
| Total Award  $125,000 | Total Attorney Fees  $15,000 |

If the limit of liability of the applicable coverage is $100,000, we would pay $100,000 of the $125,000 award, and $12,500 for Alaska Rule of Civil Procedure 82(b)(1) attorney fees, calculated as follows:

| | |
|---|---|
| 20% of $ 25,000 | $ 5,000 |
| 10% of $ 75,000 | $ 7,500 |
| Total Limit of Liability  $100,000 | Total Attorney Fees Covered  $12,500 |

You would be liable to pay, directly and without our assistance, the remaining $25,000 in liability plus the remaining $2,500 for attorney fees under Alaska Rule of Civil Procedure 82 not covered by this policy.

Exhibit  5
Page  19  of  21  Pages

A-30AK(6-99)    Page 16 of 16

# GEICO

# Automobile Policy
# Amendment - Alaska

Policy Number:

*Your* policy is amended as follows:

## SECTION I - LIABILITY COVERAGES

### LOSSES WE WILL PAY FOR *YOU* UNDER SECTION I

The first paragraph is replaced as follows:

Under Section I, we will pay damages, other than punitive and exemplary damages, which an *insured* becomes legally obligated to pay because of:

### EXCLUSIONS

The following exclusion is added:

14. We do not cover *bodily injury* or property damage caused by an auto driven in or preparing for any prearranged or organized racing, speed or demolition contest of any nature.

## SECTION II - AUTOMOBILE MEDICAL PAYMENTS COVERAGE

### EXCLUSIONS

The following exclusion is added:

7. We do not cover *bodily injury* caused by an auto driven in or preparing for any pre-arranged or organized racing, speed or demolition contest of any nature.

## SECTION III - PHYSICAL DAMAGE COVERAGES

### DEFINITIONS

The second paragraph (b) of Definition 5., *"Insured"* is replaced with:

(b)    regarding a *non-owned auto; you* and *your relatives,* using the auto, but only if the *non-owned auto* is a motor vehicle rented by the *insured.* There is no physical damage coverage for a *non-owned auto,* other than a rented motor vehicle.

### LOSSES WE WILL PAY

#### Comprehensive (Excluding *Collision*)

The first sentence of paragraph 1.is replaced with:

1.    We will pay for each *loss,* less the applicable deductible, caused other than by *collision,* to the *owned auto* or to a motor vehicle rented by the *insured.* There is

We affirm this amendment.

no Comprehensive coverage for a **non-owned auto**, other than a rented motor vehicle.
### *Collision*

Paragraph 1. Is replaced with:

1.    We will pay for *collision loss* to the *owned auto* or to a motor vehicle rented by the *insured* for the amount of each *loss* less the applicable deductible. There is no Collision coverage for a *non-owned auto,* other than a rented motor vehicle.

### ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES

Item 1., which provides reimbursement of transportation expenses, is deleted.

### EXCLUSIONS

Exclusion 3. is replaced with:

3.    There is no physical damage coverage for a *non-owned auto* except for a motor vehicle rented by the *insured.*

The following exclusion is added:

11. We do not cover any physical damage to an auto being driven in or preparing for any prearranged or organized racing, speed or demolition contest of any nature.

### LIMIT OF LIABILITY

Item 4. is deleted. There is no coverage for a *trailer* not owned by *you.*

## SECTION V - GENERAL CONDITIONS

Condition 6., CANCELLATION BY THE *INSURED*

The first paragraph of Condition 6. is replaced as follows:

*You* may cancel this policy by delivering or mailing to us a written notice stating when, after the notice, cancellation will be effective.

## SECTION VI - AMENDMENTS AND ENDORSEMENTS

The endorsement titled "SPECIAL ENDORSEMENT - UNITED STATES GOVERNMENT EMPLOYEES" is deleted.

J. C. Stewart
Secretary

•    GEICO Casualty Company    •

O. M. Nicely
President

CC1148 (6-99)

Exhibit   5
Page   20   of   21   Pages

# GEICO

Policy Number:

*Your* policy is amended as follows:

**SECTION III - Physical Damage Coverages**

**LIMIT OF LIABILITY**

The following numbered paragraph is added:

6.    for glass repair or replacement, not to exceed the prevailing competitive price. Although you have the right to choose any glass repair facility or location, the limit of liability for *loss* to window glass is the cost to:

    (a)  repair; or
    (b)  replace

We affirm this amendment.

# Automobile Policy Amendment

## Glass Repair/Replacement

such glass but will not exceed the prevailing competitive price. This is the price we can secure from a competent and conveniently located glass repair facility. At *your* request, we will identify a glass repair facility that will perform the repairs at the prevailing competitive price.

J. C. Stewart
Secretary

GEICO CASUALTY COMPANY

O. M. Nicely
President

CC-200 (7-02)

Exhibit 5
Page 21 of 21 Pages

# FAX TRANSMITTAL

11/4/05

**FROM:** John George    907 789-6964

RECEIVED

NOV – 4 2005

Call, Hanson & Kell, P.C.

**TO:** Susan Mack   Call, Hanson & Kell  907 258-8865

**PAGES:** 7 including cover page

RE: Charles v. GEICO

Exhibit I

Page 1 of 1 Pages

John L. George
3328 Fritz Cove Road Juneau, Alaska 99801
Phone 907 789-0172  Fax 907 789-6964

November 4, 2005

Ms Susan D. Mack
Call, Hanson & Kell, P.C.
250 H Street
Anchorage Alaska 99501-2112

Re:    Charles v. GEICO
       Case No. 4BE-05-55 CI
       Your File: 1101.017

Dear Ms. Mack

Pursuant to your request I have reviewed the documents provided to me as well as certain
Alaska insurance statutes and regulations in order to render an opinion on the questions
posed in your letter of October 13, 2005. Attached is my report along with a copy of my
CV.

My fees are billed at $200.00 per hour plus expenses with a billing limit of eight hours
per day for work done outside of Juneau. I am preparing an invoice and will send it under
separate cover.

Please let me know if you will need to schedule me for deposition or to testify at trial.

Sincerely,

John L. George

Exhibit ___1___
Page __2__ of __7__ Pages

**John L. George**
3328 Fritz Cove Road
Juneau, Alaska 99801

November 4, 2005

Ms. Susan D. Mack
Call, Hanson & Kell, P.C.
250 H Street
Anchorage, Alaska 99501-2112

Re: Charles v. GEICO

Dear Ms. Mack:

I have reviewed pertinent sections of AS 21, AS 28, 3AAC 26, and the complete set of documents provided to me by Call, Hanson & Kell in order to answer the questions outlined in Susan Mack's letter of October 13, 2005. My answers are as follow:

1. Did GEICO fail to comply with AS 21.89.020?

AS 21.89.020 (a) requires that insurers must provide limits of liability coverage not less than those required in AS 28.20.440 or AS 28.22.101. The policy issued to Jack Charles (Charles) meets the minimum requirements of the statute.
AS 21.89.020 (b) does not apply in this case
AS 21.89.020 (c) Specifies that an insurer issuing automobile insurance policies in Alaska must offer, uninsured and underinsured motorist coverage, commonly referred to as UM/UIM. GEICO did offer this coverage as required by law. Further the statute requires that various limits of coverage be initially offered at various limits and that the insured must select a limit of coverage or reject coverage in writing. Charles selected limits of 50/100 when he purchased his policy on October 7, 2003.
AS 21.89.020 (c) specifies that an insurer issuing automobile insurance policies in Alaska must offer at each renewal, uninsured and underinsured motorist coverage. GEICO did offer this coverage at renewal as required by law.
AS 21.89.020 (d) requires insurers to offer UM/UIM coverage with limits which meet or exceed the requirements of AS 28.20.440 or AS 28.22.101. The GEICO policy meets these requirements.
AS 21.89.020 (e) states: "The coverage required under (c) and (d) of this section may be waived in writing by the insured in whole or in part. After selection of limits by the insured or the exercise of the option to waive the coverage in whole or in part, the insurer is not required to notify any policy holder in any renewal, supplemental, or replacement policy, as to the availability of the coverage or optional limits, and the waived coverage may not be included in any renewal, supplemental, or replacement policy. The insured may, at any time, make a written request for additional coverage or coverage more extensive than that provided on a prior policy." GEICO met or exceeded this requirement by notifying Charles that he could change UM/UIM limits or that they would automatically remain the same.

1

Exhibit 1
Page 3 of 7 Pages

The remainder of AS 21.89.020 does not apply to this case.

I find that GEICO did not fail to comply with any part of AS 21.89.020 in their dealings with Charles.

2.  Did GEICO breach the insurance contract by refusing to pay Charles' demand for policy limits?

GEICO's responsibility to its policyholders and to third party claimants according to the Unfair Claims Practices Act is to promptly investigate claims and where liability is reasonably clear, to make a fair and equitable settlement offer or compromise settlement. The file documents several notices of coverage under the medical payment section of the policy which are available to Charles and his passenger regardless of liability. No claim was made for this available coverage. The medical payment policy limits appear adequate to cover all of the relevant medical costs incurred to date. GEICO's notice of coverage met their responsibility under the med pay portion of the policy.

The policy states under the section IV, UM/UI coverage, that the insurer "will pay for damages for bodily injury, caused by an accident, which the **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle**, an **underinsured motor vehicle**, or a **hit and run motor vehicle** arising out of the ownership, maintenance or use of that vehicle." In the case at issue, liability has not yet clearly been established and therefore it cannot reasonably be determined whether Charles and his passenger are legally entitled to recovery under the UM/UIM section of the policy. The police report and witness statements do not indicate clear liability of Joe or Charles. GEICO has no obligation to settle or compromise a claim where liability has not been legally established or is not reasonably clear.

In addition to the liability issue, the extent of injury determines the reasonableness of any settlement offer where liability is legally determined or is reasonably clear. GEICO promptly investigated the claim but was unable to obtain medical records for sometime after the accident. When they did receive the records there was no indication of severe injury, continuing treatment or complaint of continuing symptoms. Based upon the medical records I have reviewed, the medical costs for diagnosis of $1067.68 and treatment cost of $360.60 for Charles and diagnosis cost of $1355.78 and treatment cost of $167.35 for the passenger, I do not conclude that the offer of settlements in the amount of $5500.00 and $6300.00 were unreasonable.

I conclude that GEICO did not breach the insurance contract by refusing to pay Charles' demand for policy limits where liability has not been legally determined and is not reasonably determinable.

3.  Did GEICO have a contractual or statutory duty to advise the Charleses about appropriate amount of insurance coverage they should purchase?

The contractual relationship between Charles and GEICO is spelled out in the insurance contract. Nothing in the contract obligates GEICO to advise Charles of the appropriateness of the policy limits for his individual circumstances. GEICO was not

2



Exhibit  I
Page  4  of  7  Pages

acting as an insurance broker in the transaction and no special relationship existed between the parties that would obligate GEICO to provide such information or counsel.

Statutorily GEICO is required to offer limits of liability as set out in AS 21 and AS 28. The records show that GEICO met that responsibility. The statute does not require insurers to counsel insured's on appropriate policy limits.

I conclude that GEICO had no contractual or statutory duty to advise the Charleses about appropriate amount of insurance coverage they should purchase.

4. Did GEICO comply with the Alaska Unfair Claims Practices Act?
I have carefully reviewed AS 21.36.125 Unfair Claim Settlement Practices and do not find that GEICO has committed any violation of the act pertaining to this claim.

5. Did GEICO act in bad faith by failing to investigate the Charles claim for uninsured motorist benefits?

I do not conclude that GEICO failed to investigate this claim in any respect. Their investigation as to liability was hampered by lack of police reports, lack of cooperation and failure to obtain statements of Charles. GEICO's inability to obtain medical records and statements from Charles impaired their determination of damages suffered by Charles. Under the UM/UIM coverage provided by the policy, it is the responsibility of the insured or other injured person, as soon as possible to give the insurer a written proof of claim including the nature and extent of injuries, treatment and other facts which may affect the amount payable. GEICO immediately attempted to confirm insurance coverage for Joe and determined within days that Joe was uninsured. GEICO appropriately on several occasions neither accepted nor rejected liability for Charles UM claim based upon their ongoing investigation.

I conclude that GEICO did not act in bad faith in their investigation of the Charles claim for uninsured motorist benefits.

6. Did GEICO act in bad faith by refusing to pay policy limits on each claim?

To the extent possible GEICO did a prompt and thorough investigation of this claim. That investigation did not find a legal or reasonable determination of liability on the part of Joe. It is not unreasonable for GEICO to refuse to pay policy limits for Charles claim where liability is not reasonably clear. Claim investigation found minor medical expenses incurred, no loss of wages or other impairment indications. Charles has an obligation under the terms of the policy to provide a proof of claim including the nature and extent of injuries, treatment and other facts which may affect the amount payable. The proof of claim information provided by Charles does not clearly and reasonably support a policy limit settlement offer.

I conclude that GEICO did not act in bad faith by refusing to pay policy limits on each claim.

7. Were the Charles acting in bad faith in their behavior towards the file?

3

Exhibit I
Page 5 of 7 Pages

Question 7 is unclear and therefore I am unable to give an opinion. Upon restatement of the question or clarification of its meaning I will supplement my report.

Respectfully submitted,

John L. George

Exhibit __I__
Page __6__ of __7__ Pages

**John L. George**
3328 Fritz Cove Road
Juneau Alaska 99801
Tel.907 789-0172 Fax 907 789-6964

1988 – Present          Consultant and Lobbyist
Current lobbying clients: American Council of Life Insurers and AFLAC

1984 – 1988
Director, Alaska Division of Insurance. Responsible for regulating insurance companies
and insurance producers in the State of Alaska. Duties included oversight of all division
employees and their work product, acting as hearing officer and setting insurance
regulatory policy for the State.

1976 – 1984
Deputy Director, Alaska Division of Insurance. Under the Director of Insurance,
responsible for regulating insurance companies and insurance producers in Alaska.
Duties included conducting investigations, acting as hearing officer, performing
insurance company financial reviews and budget preparation.

1973 – 1976
Risk Manager, State of Alaska. Administered insurance programs, self-insurance
programs and loss control programs for all State agencies.

1971 – 1973
Assistant Risk Manager, Santa Fe International. Responsible for claims administration,
premium allocations, policy review, surety bond compliance and management of joint
venture insurance programs.

1969 – 1971
Insurance Assistant, Signal Oil and Gas Company. Responsible for claims handling and
claim review, obtaining and filing surety bonds with government agencies, instructing
employees on claims filing procedures and assisting with the implementation of a
nationwide self-insurance program.

Education
1969 BS degree in Finance, Insurance and Real Estate from California Polytechnic
University, Pomona California.

Publications authored in the past ten years: None

Expert depositions or testimony given in past four years: None

Exhibit I
Page 7 of 7 Pages

## AUTHORIZATION TO OBTAIN LEAVE AND SALARY INFORMATION

Claim Number 0224556970101011 / H682

I,_____ hereby authorize_____
Company, through its employees and authorized representatives, to acquire all leave and salary information available to and in the possession of any employer, concerning or in any way relating to time or salary loss relating to an injury or injuries received by _____ in an accident that occurred on _____, 20 ____, at or near _____.

This information is being requested for the purpose of evaluating a claim made by this individual and in preparation for any proceedings connected with that claim. This authorization or a photostatic copy will be tendered to any current or prior employer. This authorization shall be valid for the duration of the claim.

I further understand that I am entitled to a copy of this authorization form and acknowledge receipt by signing below.

_____          _____
Date                                Authorizing Party

                                   _____
                                   Relationship, if not the injured party

2004 SEP -1 PM 8:21

> **Alaska Law requires the following to appear on this form:**
> *"A person who knowingly and with intent to injure, defraud or deceive an insurance company, files a claim containing false, incomplete or misleading information is guilty of a felony."*

## MEMBER INSURANCE CRIME PREVENTION INSTITUTE

C-176 (10-03)

Exhibit 11
Page 1 of 6 Pages

## AUTHORIZATION TO OBTAIN LEAVE AND SALARY INFORMATION

Claim Number 0224556970101011 / H682

I,_____ hereby authorize_____
Company, through its employees and authorized representatives, to acquire all leave and salary information available to and in the possession of any employer, concerning or in any way relating to time or salary loss relating to an injury or injuries received by _____ in an accident that occurred on _____, 20 _____, at or near _____.

This information is being requested for the purpose of evaluating a claim made by this individual and in preparation for any proceedings connected with that claim. This authorization or a photostatic copy will be tendered to any current or prior employer. This authorization shall be valid for the duration of the claim.

I further understand that I am entitled to a copy of this authorization form and acknowledge receipt by signing below.

_____        *Bernadette Charles*
Date                             Authorizing Party

2004 SEP -1 PH 8: 22

_____
Relationship, if not the injured party

> **Alaska Law requires the following to appear on this form:**
> *"A person who knowingly and with intent to injure, defraud or deceive an insurance company, files a claim containing false, incomplete or misleading information is guilty of a felony."*

### MEMBER INSURANCE CRIME PREVENTION INSTITUTE

C-176 (10-03)

Exhibit U
Page 2 of 6 Pages

Claim Number 0224556970101011 / H682

## HIPAA COMPLIANT AUTHORIZATION TO OBTAIN MEDICAL RECORDS

To: ___IHS  VKHC___ (Provider Name)

___Po Box 528 Bethel, AK 99559___ (Provider Address)

For purposes of evaluating a claim made by me and/or preparing and conducting a trial on the issues concerning a claim, you are hereby authorized to furnish to Government Employees Insurance Company, GEICO General Insurance Company, GEICO Indemnity Company, or GEICO Casualty Company (individually and collectively referred to as "GEICO"), any and all medical information which may be requested concerning my physical condition and treatment therefore, diagnosis, prognosis, and any and all records, files, or other documentation concerning the treatment, prescription, consultation or other advisory visits or events (collectively referred to as the "Records") that pertain to:

- ___Bernadette Charles___,
  **[PATIENT – PRINT YOUR NAME ABOVE]**

- DOB: ___8-6-84___,
  **[PATIENT – WRITE YOUR BIRTH DATE ABOVE]**

- SSN: ___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___.
  **[PATIENT – WRITE YOUR SOCIAL SECURITY NUMBER ABOVE]**

- The Records covered by this HIPAA Compliant Authorization cover the time period beginning five (5) years prior to the date of last treatment through **[PATIENT – INDICATE YOUR LAST DATE OF TREATMENT IN THE FOLLOWING SPACE]** _____, 20_____, the date of last treatment (and up to and including the date of Provider's compliance with this HIPAA Complaint Authorization).

- The Records shall specifically include, but shall not be limited to, such condition and treatment as may pertain to the automobile accident/loss/claim of **[PATIENT – INDICATE THE DATE OF THE AUTOMOBILE ACCIDENT/LOSS/CLAIM IN THE FOLLOWING SPACE]** _____, 20_____.

This HIPAA Compliant Authorization shall also allow GEICO's representatives or any physicians appointed by it to examine your records concerning said condition or treatment. The information covered by this Authorization includes, but is not limited to, reports, records, test results, X-rays, and any other diagnostic testing, whether in your possession or available to you. I understand that the information in the Records may include information relating to Sexually Transmitted Disease, Acquired Immunodeficiency Syndrome (AIDS), Human Immunodeficiency Virus (HIV) and other communicable diseases, Behavioral Health Care/Psychiatric Care, and treatment for alcohol and drug abuse. Copies of this Authorization shall be considered as valid as the original. This information is being requested for the purpose of evaluating a claim made by me and/or preparing and conducting a trial on the issues concerning this claim. This Authorization shall be valid for the duration of the claim. This is not a release of claims for damages. I further understand that I am entitled to a copy of this Authorization and acknowledge receipt by signing below.

Page 1 of 2

Exhibit ___U___

are ___3___ of ___6___ Pages

Claim Number 0224556970101011 / H682

I acknowledge that the information disclosed pursuant to this Authorization may be re-disclosed by GEICO pursuant to applicable law and may no longer be protected by the Heath Insurance Portability and Accessibility Act (HIPAA).

**Revocation Section:** I acknowledge that I have the right to revoke this Authorization at any time. A revocation of this Authorization must be in writing and sent to the medical provider. The revocation of this Authorization will be effective upon receipt and will be prospective only.

I acknowledge that I am aware that the consequences of my not signing this Authorization can include a delay in the processing/resolution of the claim, a potential denial of the claim, or other consequences recognized by applicable state law and/or the insurance policy at issue.

_Bernadette Charles_
**[SIGNATURE OF PATIENT]**

_Bernadette Charles_
**[PRINTED NAME OF PATIENT]**

_8.24-04_
**[DATE]**

*Personal Representatives Section: If a personal representative executes this form on behalf of the patient, that representative warrants that he or she has authority to sign this form on the basis of:*

_____.

---

Alaska Law requires the following to appear on this form:
*"A person who knowingly and with intent to injure, defraud or deceive an insurance company, files a claim containing false, incomplete or misleading information is guilty of a felony."*

---

## MEMBER NATIONAL INSURANCE CRIME BUREAU

Page 2 of 2

Exhibit __U__
Page __4__ of __6__ Pages

Claim Number 0224556970101011 / H682

## HIPAA COMPLIANT AUTHORIZATION TO OBTAIN MEDICAL RECORDS

To: _I HS   YKHC_ (Provider Name)

_Po Box 528  Bethel, AK 99559_ (Provider Address)

For purposes of evaluating a claim made by me and/or preparing and conducting a trial on the issues concerning a claim, you are hereby authorized to furnish to Government Employees Insurance Company, GEICO General Insurance Company, GEICO Indemnity Company, or GEICO Casualty Company (individually and collectively referred to as "GEICO"), any and all medical information which may be requested concerning my physical condition and treatment therefore, diagnosis, prognosis, and any and all records, files, or other documentation concerning the treatment, prescription, consultation or other advisory visits or events (collectively referred to as the "Records") that pertain to:

- _Jack Charles_ ,
  **[PATIENT – PRINT YOUR NAME ABOVE]**

- DOB: _March 8, 1980_ ,
  **[PATIENT – WRITE YOUR BIRTH DATE ABOVE]**

- SSN: _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_
  **[PATIENT – WRITE YOUR SOCIAL SECURITY NUMBER ABOVE]**

- The Records covered by this HIPAA Compliant Authorization cover the time period beginning five (5) years prior to the date of last treatment through **[PATIENT – INDICATE YOUR LAST DATE OF TREATMENT IN THE FOLLOWING SPACE]** _____, 20_____, the date of last treatment (and up to and including the date of Provider's compliance with this HIPAA Complaint Authorization).

- The Records shall specifically include, but shall not be limited to, such condition and treatment as may pertain to the automobile accident/loss/claim of **[PATIENT – INDICATE THE DATE OF THE AUTOMOBILE ACCIDENT/LOSS/CLAIM IN THE FOLLOWING SPACE]** _____, 20_____.

This HIPAA Compliant Authorization shall also allow GEICO's representatives or any physicians appointed by it to examine your records concerning said condition or treatment. The information covered by this Authorization includes, but is not limited to, reports, records, test results, X-rays, and any other diagnostic testing, whether in your possession or available to you. I understand that the information in the Records may include information relating to Sexually Transmitted Disease, Acquired Immunodeficiency Syndrome (AIDS), Human Immunodeficiency Virus (HIV) and other communicable diseases, Behavioral Health Care/Psychiatric Care, and treatment for alcohol and drug abuse. Copies of this Authorization shall be considered as valid as the original. This information is being requested for the purpose of evaluating a claim made by me and/or preparing and conducting a trial on the issues concerning this claim. This Authorization shall be valid for the duration of the claim. This is not a release of claims for damages. I further understand that I am entitled to a copy of this Authorization and acknowledge receipt by signing below.

Page 1 of 2

Exhibit _U_

Page _5_ of _6_ Pages

Claim Number 0224556970101011 / H682

I acknowledge that the information disclosed pursuant to this Authorization may be re-disclosed by GEICO pursuant to applicable law and may no longer be protected by the Heath Insurance Portability and Accessibility Act (HIPAA).

**Revocation Section**: I acknowledge that I have the right to revoke this Authorization at any time. A revocation of this Authorization must be in writing and sent to the medical provider. The revocation of this Authorization will be effective upon receipt and will be prospective only.

I acknowledge that I am aware that the consequences of my not signing this Authorization can include a delay in the processing/resolution of the claim, a potential denial of the claim, or other consequences recognized by applicable state law and/or the insurance policy at issue.

_____
**[SIGNATURE OF PATIENT]**

Jack Charles
_____
**[PRINTED NAME OF PATIENT]**

8-24-04
_____
**[DATE]**

*Personal Representatives Section:  If a personal representative executes this form on behalf of the patient, that representative warrants that he or she has authority to sign this form on the basis of:*

_____

2004 SEP — PH 8: 21

Alaska Law requires the following to appear on this form:
*"A person who knowingly and with intent to injure, defraud or deceive an insurance company, files a claim containing false, incomplete or misleading information is guilty of a felony."*

### MEMBER NATIONAL INSURANCE CRIME BUREAU

Page 2 of 2

Exhibit  U
Page  6  of  6  Pages

**GEICO**
**DIRECT**

■ Governme   ...ployees Insurance Company
■ GEICO General Insurance Company
■ GEICO Indemnity Company
■ GEICO Casualty Company

**Regional Office:** One GEICO West ■ PO Box 509090 ▫ San Diego, CA 92150-9090

## REQUEST FOR MEDICAL RECORDS/BILLING

October 15, 2004

IHS YKHC
Po Box 528
Bethel, AK 99559

| | |
|---|---|
| Claim#: | 0224556970101011 |
| Insured: | Jack Charles |
| Company: | GEICO Casualty Company |
| Your Patient: | Bernadette Gregory (Charles) |
| Account #: | unknown |
| Loss Date: | 05/03/04 |
| Dates of Service: | all dates of service from this MVA |

GEICO Casualty Company is requesting the following items for the dates of service listed above.

- ☐ Narrative Report
- ☐ Emergency Room Records
- ☐ Disability Restrictions/limitations/duration _____
- ☐ Discharge Summary
- ☒ A Complete, Itemized Bill (Including CPT and ICD-9 Codes)
- ☒ All Treatment notes
- ☐ X-ray/Radiology Report
- ☐ Copies of X-rays
- ☐ Your TAX ID # _____
- ☐ Other: _____
- ☐ Current Treatment Plan _____

_____

Should you have any questions please give me a call at my number listed below. *Please include treatment notes with all further billings.*

Thank you,

Rebecca Caldwell / H682
Claims Examiner
800-654-5896 XT. 5829

CC:   Jim Valcarce

```
Please mail the requested items to:
         GEICO Direct
         PO Box 509090
     San Diego, Ca 92150-9090
   Fax: 858-513-5824 or 513-5905
  Please include a copy of the request
```

Exhibit V
Page 1 of 2 Pages

Shareholder Owned Companies Not Affiliated With The U.S. Government

# GEICO DIRECT

- Governmer ..ployees Insurance Company
- GEICO General Insurance Company
- GEICO Indemnity Company
- GEICO Casualty Company

**Regional Office:** One GEICO West ■ PO Box 509090 ■ San Diego, CA  92150-9090

## REQUEST FOR MEDICAL RECORDS/BILLING

October 15, 2004

IHS YKHC
Po Box 528
Bethel, AK 99559

| | |
|---|---|
| Claim#: | 0224556970101011 |
| Insured: | Jack Charles |
| Company: | GEICO Casualty Company |
| Your Patient: | Jack Charles |
| Account #: | unknown |
| Loss Date: | 05/03/04 |
| Dates of Service: | all dates of service from this MVA |

GEICO Casualty Company is requesting the following items for the dates of service listed above.

- ☐ Narrative Report
- ☐ Emergency Room Records
- ☐ Disability Restrictions/limitations/duration _____
- ☐ Discharge Summary
- ☒ A Complete, Itemized Bill (Including CPT and ICD-9 Codes)
- ☒ All Treatment notes
- ☐ X-ray/Radiology Report
- ☐ Copies of X-rays
- ☐ Your TAX ID # _____
- ☐ Other: _____
- ☐ Current Treatment Plan _____

_____

Should you have any questions.please give me a call at my number listed below. *Please include treatment notes with all further billings.*

Thank you,

Rebecca Caldwell / H682
Claims Examiner
800-654-5896 XT. 5829

CC:   Jim Valcarce

> **Please mail the requested items to:**
> **GEICO Direct**
> **PO Box 509090**
> **San Diego, Ca 92150-9090**
> Fax: 858-513-5824 or 513-5905
> Please include a copy of the request

Exhibit  V
Page  2  of  2  Pages

Shareholder Owned Companies Not Affiliated With The U.S. Government

YUKON-KUSKWIM HEALTH CORPORATION
Health Information Services Department
P.O. Box 287, Suite 3016, Bethel AK 99559
Phone: (907) 543-6388    Fax: (907) 543-6417

## AUTHORIZATION TO RELEASE PATIENT HEALTH INFORMATION

Release to:       COOKE, ROOSA & VALCARCE, LLC

Address:       P. O. Box 409, Bethel, Alaska 99559

**INFORMATION TO BE RELEASED FROM:**    X  YKHC    ☐  ASRC    ☐  ESRC    ☐  SMSRC

   ☐  Other (list):_____

   Address:_____ City/State/Zip_____

Specific Purpose for this information:    Legal Representation

The patient or the patient's representative must read and initial the following statements:

### TYPE OF INFORMATION TO BE RELEASED:

| Initial Here | Description of Records | Dates of Treatment (be specific) | |
|---|---|---|---|
| BG | Medical Records (chart notes and doctors notes) | From: 5-1-04 | To: Present |
| BG | Laboratory Reports | From: 5-1-04 | To: Present |
| BG | Radiology (Xray) Reports | From: 5-1-04 | To: Present |
| BG | Immunizations | From: 5-1-04 | To: Present |
| BG | Other*: (specify) Correspondence & Notes | From: 5-1-04 | To: Present |

*Certain types of record may not be released using this form. This includes sequestered records, Behavioral Health records HIV/AIDS records, and other records protected by law.

10-14-2004
Date

Bernadette Gregory
Signature of Patient or Legally Responsible Party

_____
Relationship to Patient

THIS AUTHORIZATION IS VALID FOR 180 DAYS ONLY AND MAY BE REVOKED IN WRITING AT ANY TIME PRIOR TO 120 DAYS BY NOTIFYING THE HEALTH INFORAMTION SERVICES DEPARTMENT (SEE ADDRESS ABOVE). THE REVOCATION IS VALID EXCEPT TO THE EXTENT THAT THE PROGRAM WHICH IS TO MAKE THE DISCLOSURE HAS ALREADY TAKEN ACTION.

ONCE THE OFFICE DISCLOSES HEALTH INFORMATION, THE PERSON OR ORGANIZATION THAT RECEIVES IT MAY RE-DISCLOSE IT. PRIVACY LAWS MAY NO LONGER PROTECT IT.

This information is to be released for the purpose stated above and may not be used by the recipient for any other purpose. Any person who knowingly and willfully requests or obtains any record concerning any individual from a Federal agency under false pretenses shall be guilty of a misdemeanor (5 U.S.C. 552a(i) (3)). In the case of alcohol and drug abuse patient records, a falsified authorization of disclosure is also prohibited under 42 CFR 2.31 (d).

| | After hours release: Person releasing information: |
|---|---|
| Patient Name:    Bernadette Gregory | |
| Date of Birth:    8-6-1984 | RECEIVED |
| Social Security ##:    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 | Date Released: DEC - 3 2004 |
| YK00036_vl.doc (4/30/03)  #55083 | Health Information Services |

Exhibit W
Page 1 of 2 Pages

TOTAL P.04



YUKON-KUSKOKWIM HEALTH CORPORATION
Health Information Services Department
P.O. Box 287, Suite 3016, Bethel AK 99559
Phone: (907) 543-6388     Fax: (907) 543-6417

## AUTHORIZATION TO RELEASE PATIENT HEALTH INFORMATION

Release to:   COOKE, ROOSA & VALCARCE, LLC

Address:   P. O. Box 409, Bethel, Alaska 99559

**INFORMATION TO BE RELEASED FROM:**   X   YKHC   ☐ ASRC   ☐ ESRC   ☐ SMSRC

☐   Other (list): _____

   Address: _____   City/State/Zip _____

Specific Purpose for this information:   Legal Representation

The patient or the patient's representative must read and initial the following statements:

**TYPE OF INFORMATION TO BE RELEASED:**

| Initial Here | Description of Records | Dates of Treatment (be specific) | |
|---|---|---|---|
| JC | Medical Records (chart notes and doctors notes) | From: 5-1-04 | To: Present |
| JC | Laboratory Reports | From: 5-1-04 | To: Present |
| JC | Radiology (Xray) Reports | From: 5-1-04 | To: Present |
| JC | Immunizations | From: 5-1-04 | To: Present |
| JC | Other*: (specify) Correspondence & Notes | From: 5-1-04 | To: Present |

*Certain types of record may not be released using this form. This includes sequestered records, Behavioral
Health records HIV/AIDS records, and other records protected by law.

10-4-04
Date

Signature of Patient or Legally Responsible Party

Self
Relationship to Patient

THIS AUTHORIZATION IS VALID FOR 180 DAYS ONLY AND MAY BE REVOKED IN WRITING AT ANY TIME PRIOR TO 120 DAYS BY
NOTIFYING THE HEALTH INFORAMTION SERVICES DEPARTMENT (SEE ADDRESS ABOVE). THE REVOCATION IS VALID EXCEPT TO
THE EXTENT THAT THE PROGRAM WHICH IS TO MAKE THE DISCLOSURE HAS ALREADY TAKEN ACTION.

ONCE THE OFFICE DISCLOSES HEALTH INFORMATION, THE PERSON OR ORGANIZATION THAT RECEIVES IT MAY RE-DISCLOSE IT.
PRIVACY LAWS MAY NO LONGER PROTECT IT.

This information is to be released for the purpose stated above and may not be used by the recipient for any other purpose. Any
person who knowingly and willfully requests or obtains any record concerning any individual from a Federal agency under false
pretenses shall be guilty of a misdemeanor (5 U.S.C. 552a(i) (3)). In the case of alcohol and drug abuse patient records, a falsified
authorization of disclosure is also prohibited under 42 CFR 2.31 (d).

| | |
|---|---|
| Patient Name:   Jack Charles | After hours release Person releasing information: |
| Date of Birth:   3-8-1980 | DEC 3 2004 |
| Social Security ##:   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 | Date Released: |

YK00036_v1.doc (4/30/03)

# 49722

RECEIVED
Health Information Services

Exhibit W
Page 2 of 2 Pages

Claim·reference: 0224556970101011-01                    Report Reference Number: 33229992

# VINguard™ Vehicle Identification

## VIN: 1G1JC5444N7140050

Every vehicle sold in the United States is required to have a manufacturer assigned Vehicle Identification Number (VIN). This number provides the exact specifications of the vehicle. Decoding the VIN identifies the exact vehicle for which the local market value will be determined.

|              | Insurer Description                | VINguard Analysis |
|--------------|-----------------------------------|-------------------|
| Year         | 1992                              | 1992              |
| Make         | Chevrolet                         | Chevrolet         |
| Model        | Cavalier Rs                       | Cavalier          |
| Model Number | JC5                               | JC5               |
| Body Style   | 4 Door Sedan                      | 4 Door Sedan      |
| Engine       | 4-2.2L-FI                         | 4-2.2l-Fi         |
| Transmission | Automatic Transmission Overdrive  |                   |
| Restraints   |                                   | Automatic Belt    |
| Curb Weight  |                                   | 2,520             |
| Odometer     | 144,000                           |                   |

This vehicle was assembled in LORDSTOWN, OH

VINguard™ is a database used to decode completely and accurately all manufacturer assigned Vehicle Identification Numbers.

# VINguard™ Vehicle History Information

Using the VIN for this vehicle, VINguard™ detected discrepancies or prior history requiring additional research. Please review the information detailed below.

VINguard™ Messages: VINguard has decoded this VIN without any errors.

ISO Vehicle History:
Number of times reported to ISO: 2
ISO's file number: H0100334963

Activity Reported: Property & Casualty
Loss date: 05/03/2004
Insurance company: Criterion Casualty Company
Phone: (858) 513-5376
Claim ref: 0224556970101011
Point of Impact:

Activity Reported: Total Loss Valuation           _vehicle is prior total loss
Loss date: 08/18/2000
Insurance company: State Farm Mutual Automobile Insurance Company

Exhibit __X__
Page __1__ of __1__ Pages

*Received $80.00*
*For Estimate*
*[signature] Cezary L. Cn*

# ESTIMATE

## CEŻARY'S AUTO BODY & PAINT
P.O. Box 1805
BETHEL, ALASKA 99559
(907) 543-4241

| NAME | JACK CHARLES | | PHONE | | DATE 5/4/04 |
| STREET | | | CITY BETHEL | | |
| YEAR 92 | COLOR BLK | MAKE CHEV | MODEL CAVALIER | | ESTIMATE PREPARED BY CEZARY |
| REGISTRATION NO ZQ 102 | | SERIAL NO 1G1JC5444N7140050 | ODOMETER | | |
| INSURANCE CO | | | ADJUSTER | | |

| REPLACE | REPAIR | | DESCRIPTION | | PARTS | LABOR | REFINISH | SUBLET |
|---|---|---|---|---|---|---|---|---|
| ✓ | | L | REAR DOOR | 22581093 | 883,60 | 5,2 | 3,1 | R&R |
| ✓ | | L | REAR DOOR HANDLE OUT. | 20332646 | 43,31 | — | — | — |
| ✓ | | L | QUARTER PANEL | 12395475 | 574,30 | 14,0 | 3,8 | R&R |
| ✓ | | | REAR AXLE ASSY | 22587876 | 1176,00 | 3,8 | | |
| ✓ | | L | REAR WHEEL | 22542366 | 128,30 | 0 | — | — |
| | | | PAINT MATERIAL       — MIN | | | | | 250,00 |

| | TOTALS | 2805 | 23,0 | 6,9 | 250,00 |
|---|---|---|---|---|---|

The above is an estimate based on our inspection and does not cover any additional parts or labor which may be required after the work has been started. Occasionally, worn or damaged parts are discovered which may not be evident on the first inspection. Because of this, the above prices are not guaranteed. Quotations on parts and labor are current and subject to change.

AUTHORIZATION FOR REPAIR. You are hereby authorized to make the above repairs:

Exhibit Y
Page 1 of 1 Pages

SIGNED

DATE

| TOTAL PARTS | $ | 2805,51 |
|---|---|---|
| TOTAL LABOR | $ | 1 840,00 |
| TOTAL REFINISH | $ | 552,00 |
| TOTAL SUBLET | $ | 250,00 |
| TAX | | 332,49 |
| Estimate $180,00 Markup 40% | | 1202,20 |
| TOTAL | $ | 6 982,20 |